COMMONWEALTH *vs.* DANE E. McINTOSH.

No. 01-P-1265.

Hampshire. September 10, 2002. - December 23, 2002.

Present: LENK, KAPLAN, & MASON, JJ.

*Assault and Battery by Means of a Dangerous Weapon. Dangerous Weapon. Statute,* Construction.

This court declined to create a rule, for purposes of a criminal prosecution of a charge of assault and battery by means of a dangerous weapon under G. L. c. 265, § 15A, requiring that the "dangerous weapon" be an instrumentality that the batterer can "wield" or "control" in the intentional application of force; thus, this court concluded that, at the trial of a criminal complaint charging assault and battery by means of a dangerous weapon, the instrument involved in the battery, a windowpane that was shattered by the defendant's reckless act of pounding on it with his fists, constituted a "dangerous weapon" under the statute. [830-832]

COMPLAINT received and sworn to in the Northampton Division of the District Court Department on December 5, 2000.

The case was heard by *W. Michael Goggins,* J.

*Malcom B.E. Smith* for the defendant.

*Judith Ellen Pietras,* Assistant District Attorney, for the Commonwealth.

KAPLAN, J. Upon jury-waived trial in District Court, the judge found the defendant Dane McIntosh had committed a reckless act[1] in wilfully shattering a windowpane which foreseeably by its shards caused serious bodily injuries to others, and was thus guilty of two counts of assault and battery by means of a danger-

---

[1]The Commonwealth proceeded on the "reckless," not the "intentional," theory under the statute criminalizing assault and battery by means of a dangerous weapon; both theories are set out in instruction 5.401 of the Model Jury Instructions for Use in the District Courts (1997).

ous weapon (G. L. c. 265, § 15A[*b*]).[2] The defendant appeals, claiming that the judge erred in denying his motion for a required finding. He now concedes the recklessness of the act but argues that as matter of law the instrument involved was not a dangerous weapon in the sense of the statute. This point was not urged below, but we examine it. There was no error. The convictions will be affirmed.[3]

*Evidence.* The evidence on the part of the Commonwealth ran thus. In early morning, November 11, 2000, the defendant Dane McIntosh, a student at the University of Massachusetts at Amherst (U. Mass.), returned from a party to his fraternity house off campus. He learned that a fraternity brother, with whom he spoke, had been attacked and beaten by some youths that night near the Patterson freshman dormitory. The defendant did his part in helping to summon a posse, and perhaps fifteen brothers drove in three cars to the nearby Patterson dorm to find, fight, and punish the offenders. The time was about 3:00 A.M.

Upon alighting from their cars and walking toward Patterson's front entrance, the brothers met and joined forces with another group of as many as ten young men interested in the same quarry. Very soon the combination found and surrounded the hunted and their sympathizers, a group that included Anthony Ricotto, his friend (a U. Mass. student) named Robert O'Day, and two others, Dan and Tim. This was at a space at the top of some stairs leading down to the Patterson entrance. Someone struck Ricotto on the head: O'Day testified it was the defendant who did it; a couple of other bystanders did not so identify the attacker. Kicks and blows to the body fell on Ricotto and he was rather badly beaten. Dan attempted to help Ricotto by covering him with his body. Finally, Dan, O'Day, and Tim, taking hold of Ricotto, managed to make their way the short distance to the Patterson entrance door. David Bor, a freshman

---

[2]The statute then in effect read: "Whoever commits assault and battery upon another by means of a dangerous weapon shall be punished by imprisonment in the state prison for not more than ten years or by a fine of not more than one thousand dollars or imprisonment in jail for not more than two and one-half years." G. L. c. 265, § 15A(*b*), as in effect prior to St. 2002, c. 35, § 2.

[3]The defendant was sentenced to one year's probation with a special condition that he be evaluated for anger management counseling.

resident who, standing in the Patterson lobby, had seen the fracas through one of the two glass panels alongside the door, opened the door and let the four in. When the door closed it sealed itself to all but keyholders.

The defendant and some others had pursued the rescuers. Stopped at the door, the defendant turned to one of the windows. Bor, facing and about one foot from the window, saw the defendant approach it with hands lifted above his head. Fearing the defendant would come through the window or break it, Bor instantly tried to cover up. The defendant brought his fists down hard on the glass.

The window frame held glass of an area three by three feet; the glass was thicker than ordinary window glass but was clear and see-through. The defendant's blow sent the entire window-pane flying, leaving only marginal fragments still attached to the frame. Large and small shards were ejected. Shards cut Bor on the wrist and triceps and he bled quite a lot and had to be stitched. Another freshman resident, Nicole Meltzer, was standing in the lobby at the time. Like Bor, she had seen through a window the episode of the beating of Ricotto. She heard the glass shatter. Although she was at a distance of seven or eight feet from the window, shards cut her in the head as well as the leg. She bled and required stitches.

Jessica Rivalan, standing outside the building, observed the hard-fisted glass-breaking and saw the defendant and others depart from the area immediately afterward. She sounded an alarm and made a 9-1-1 call.[4]

Officer Luis Sostre of the U. Mass. police, responding to a radio call, brought his medical kit with him and ministered to the injured. Later, after some inquiries, he identified the defendant as probably the miscreant. In an interview the defendant admitted his action at the window; he said he did it out of frustration. He said he did not intend to break the glass; he did not realize there were people on the other side of the window.

Here the Commonwealth rested[5] and the judge denied the defendant's motion for a required finding. The defendant,

[4]The lobby and outside area were well-lighted and visibility was good.

[5]The Commonwealth's witnesses were Meltzer, Bor, O'Day, Rivalan, and Sostre.

testifying in his own behalf, denied striking Ricotto and said a "kid in a mohawk" had done this. The defendant (and others) had followed Ricotto and helpers to the entrance door; to the defendant's frustration, it shut just as he reached it, and he turned to the window. Through the window he "looked at him" (Ricotto) to the left in the lobby. He banged on the glass; it broke; he did not expect it to break. He did not intend to hurt anyone. He had no time to see how many were in the lobby, but he knew (here he equivocated) there were others there (besides Ricotto). At the sound of the alarm, he ran.

The judge, finding the defendant guilty, referred to the model jury instruction (see note 1, *supra*) and said that, on the "reckless theory," even if the defendant was not conscious of the serious danger inherent in his conduct, it would be enough that a reasonable person in the circumstances "would have recognized that such actions were so dangerous that it very likely could result in substantial injury."

*Discussion.* As noted, the defendant contended below that he had not acted recklessly; the judge found otherwise; and the defendant now concedes the point. The defendant did not contest below that the windowpane, as utilized by him, was a "dangerous weapon" in the sense of the statute; for the first time on appeal he now argues this instrument as used was not such a weapon as matter of law. We respond to the argument despite its delayed assertion (except as notionally raised by the motion for a required finding), for the possibility should be considered that it is correct and raises a substantial risk of a miscarriage of justice. *Commonwealth* v. *Melton*, 436 Mass. 291, 294 n.2 (2002).

Putting to one side instruments "dangerous per se" — a loaded gun, a butcher's knife — the dangerousness of an object under the statute is held to depend on its characteristics and the circumstances and manner of its use by the actor. See *Commonwealth* v. *Tevlin*, 433 Mass. 305, 310-311 (2001). Many decided cases attest to this rule; there is a collection of them, featuring items from an aerosol spray can to an automobile door, in *Commonwealth* v. *Sexton*, 425 Mass. 146, 149 (1997), to which may be added the recent example of a sneaker, in the *Tevlin* case. According to the conventional or regular applica-

tion of the rule, the windowpane as propelled would qualify as a dangerous weapon.

The defendant, however, urges upon us a new proposal. He points to the opinion of our court in *Commonwealth* v. *Sexton,* 41 Mass. App. Ct. 676, 679 (1996), stating that it was a predicate to a finding of a dangerous weapon that the actor could "wield" or "control" the instrument. In the *Sexton* case the corpus delicti was the defendant's banging the victim's head against a concrete pavement, and we held that a stationary immobile pavement could not serve as the statutory weapon. It is difficult, however, for the defendant to bring that view of the statute to bear on the present case: first, the windowpane, unlike the pavement, could be and in our view was wielded or controlled by the defendant's act; second, our decision in *Sexton* was overturned on further appellate review, *Commonwealth* v. *Sexton,* 425 Mass. 146 (1997), where the Supreme Judicial Court held that even a stationary object could be so used as to deserve to be denominated a dangerous weapon.[6]

The defendant tries to skirt the final *Sexton* decision by pointing out that the defendant there was acting "intentionally" in the sense of knowingly committing an assault and battery, whereas here we have only a reckless act. Then the defendant goes on to propose that in reckless (as opposed to intentional) cases, the predicate of "wieldability" adopted in our overruled *Sexton* decision should govern.[7] As already indicated, we have trouble conceiving why the windowpane as used would not fit

---

[6]"We do not agree with the Appeals Court that, to be a dangerous weapon, the defendant must be able to wield the item at issue, nor do we think it relevant that the pavement was present as part of the environment in which the defendant chose to participate in this assault. . . . [I]t is obvious that one could employ concrete pavement, as the defendant and his brother did here, to cause serious bodily harm to another by banging the victim's head against the hard surface. As the Commonwealth points out, there would be no problem in convicting a defendant of assault and battery by means of a dangerous weapon if he used a broken slab of concrete to bludgeon his victim. We see no reason to hold that such a conviction cannot stand merely because the instrumentality in question is a fixed thing at the time of its dangerous use." *Commonwealth* v. *Sexton,* 425 Mass. at 150-151.

[7]It is not clear whether the defendant is urging also, as a proposed condition of criminal responsibility of the reckless actor, that he be conscious or aware (in some undescribed sense) of wielding or manipulating the instrument. This would be confusingly close to turning reckless cases into intentional cases,

the predicate. But that apart, the defendant, considering that recklessness is less blameworthy than intention, evidently wants to attain a kind of equalization between the reckless and intentional phases of the crime by defining dangerous weapon more narrowly in reckless than in intentional cases — hence the attempt to resurrect wieldability for the former class. For answer we cite Justice Greaney's remarks in *Commonwealth* v. *Welch*, 16 Mass. App. Ct. 271, 276 (1983). He suggests that a desirable balance between the two aspects of the crime has already been reached by the requirement in the reckless cases that the victims shall have suffered bodily injury, whereas mere touching suffices for conviction in the intentional cases[8] — a distinction between injury that "interfere[s] with the health or comfort of the victim" and injury that is "transient and trifling." *Commonwealth* v. *Burno*, 396 Mass. 622, 627 (1986). We would not adopt, if we could, a proposal that would disturb the existing equation and that seems otherwise without particular merit.

*Judgments affirmed.*

---

and to banishing the external standard of the reasonable person from the reckless category.

[8]"The higher standard of actual bodily injury in wanton and reckless conduct cases (as opposed to the mere 'offensive touch' standard in intent cases) could be viewed as an attempt to establish levels of equivalent culpability within essentially dissimilar patterns of activity which have been determined to fall within the same statutory offense. Thus, until the unintended touch of a wilful, wanton and reckless actor causes injury, it is not cloaked with the criminal liability which attends the touch of one who intends the offensive contact." *Commonwealth* v. *Welch*, 16 Mass. App. Ct. at 276.