Agnes, A.J.
Each of the defendants has filed a motion to dismiss one of the three counts in the indictments returned against them by the Grand Jury on grounds that there was no evidence offered in support of the charge. See Commonwealth v. McCarthy, 385 Mass. 160 (1982).
BACKGROUND
Each of the defendants is charged in an indictment with three counts: Assault and Battery in violation of G.L.c. 265, §13A, Assault and Battery by Means of a Dangerous Weapon (a shod foot) in violation of G.L.c. 265, 15A(b), and Assault and Battery by Means of a Dangerous Weapon (electrical third rail) Causing Serious Bodily Injury in violation of G.L.c. 265, 15A(c), The essential facts having a bearing on the question before the court are not in dispute.
On October 11, 2002 at approximately 8:30 p.m. the defendants were waiting at the Malden MBTA Train Station on the outbound platform. They were approached by Michael McNeil who was intoxicated. Words were exchanged and there was a physical alteration between McNeil and defendant Babbitt. Babbitt said he didn’t want to fight any more. Nonetheless, McNeil attacked him and tried to punch Babbitt in the face. The punch missed Babbitt, but struck his girlfriend who was close by and had tried to intercede. She was knocked to the ground.
At this point, there is evidence that defendants Babbitt and Hickey began to punch and kick McNeil. McNeil was knocked to the ground. The defendant Babbitt continued to kick him and caused him to fall into the “pit” or track area below the platform. McNeil stood up and began to stumble as he tried to walk. At some point, he fell landing on the “third rail” where he suffered serious injuries due to the passage of electric current through his body. The Grand Jury heard the account of one eyewitness who was about 10 feet away from the events and who reported that “both the black male and the white male continued to kick Mr. MacN-eill as he layed on the deck of the platform in the fetal position. She told me (Detective Sprague of the MBTA) that the black male continued to kick Mr. MacNeill until he fell into the track pit. Ms. Singh said she observed Mr. MacNeill get up in the pit and stumble. She said that he appeared that he was struggling to walk. Ms. Singh told me that Mr. MacNeill stumbled next to the Third Rail and grabbed a chain-linked fence. She said he started to shake all over and he fell against the Third Rail.” Grand Jury Minutes at 17-18 (March 11, 2003).
The grand Jury was presented with photographs of the MBTA platform area in question which are part of the record before me on the defendants’ motion. The photographs indicate that the “pit” area below the platforms where passengers wait for the trains is divided into two channels by a chain-linked fence that separates the outbound and inbound tracks. The electrified third rail is located just before the chain-linked fence. There is a small sign above it, visible to one standing on the outbound platform, that reads “no trespassing; danger third rail.” Thus, if a person stepped off of the outbound platform, where the defendants and the victim stood, and into the pit, one would first encounter the train tracks and then if one continued further toward the chain-linked fence, one would encounter the third rail.
DISCUSSION
1. Standard of review. “Generally a court will not inquire into the competency or sufficiency of the evidence before the grand juiy.” Commonwealth v. Coonan, 428 Mass. 823, 825 (1999). An indictment may be based entirely on hearsay, Commonwealth v. St. Pierre, 377 Mass. 650, 654-55, (1979), at least so long as the hearsay is reasonably reliable. Id. at 656. In Commonwealth v. McCarthy, 385 Mass. 160 (1982), the Supreme Judicial Court recognized a narrow exception to that general rule by acknowledging that “at the veiy least the grand jury must hear sufficient evidence to establish the identity of the accused, and probable cause to arrest him. A grand jury finding of *550 probable cause is necessary if indictments are to fulfill their traditional function as an effective protection ‘against unfounded criminal prosecutions.’ ” Id. at 163 (quotation omitted). Probable cause is based on “reasonably trustworthy information .. . sufficient to warrant a prudent man in believing that the defendant had committed ... an offense.” Commonwealth v. O’Dell, 392 Mass. 445, 450 (1984), quoting Commonwealth v. Stevens, 362 Mass. 24, 26 (1972). However, an indictment is not to be dismissed merely because “the evidence probably would not have been sufficient to overcome a motion for a required finding of not guilty at a trial.” Commonwealth v. O’Dell, supra at 450.[1]
2. Sufficiency of the evidence that an offense was committed “by means of’ the third rail The defendants are each charged with one count of assault and battery causing serious bodily injury by means of a dangerous weapon in which it is alleged that the crime was committed “by means of’ the third rail. The sufficiency of the evidence presented to the grand jury in this case is not in doubt simply because it was based primarily on hearsay reports of persons at the scene as related by MBTA Detective Kenneth Sprague who testified that he responded to the scene and interviewed some of the witnesses. A grand jury indictment may be based on hearsay. See Mass.R.Crim.P. 4(c).[2]
The Commonwealth correctly points out that the crime of assault and battery by means of a dangerous weapon can be committed in one of two ways in Massachusetts — either as a result of an intentional act or as a result of a reckless act. See Commonwealth v. Burno, 396 Mass. 622, 625 (1986) (“Our common law recognizes two separate aspects to the crime of assault and battery. An assault and battery is the intentional and unjustified use of force upon the person of another, however slight, or the intentional commission of a wanton or reckless act (something more than gross negligence) causing physical or bodily injury to another”) (citations and quotations omitted); Commonwealth v. McIntosh, 56 Mass.App.Ct. 827, 832 n.1 (2002) (“The Commonwealth proceeded on the ‘reckless’ not the ‘intentional’ theory under the statute criminalizing assault and battery by means of a dangerous weapon; both theories are set out in instruction 5.401 of the Model Jury Instructions for Use in the District Courts (1997)”).
In Commonwealth v. McIntosh, supra, the Appeals Court upheld the conviction of a person who caused injury to another by punching his fists through the glass window pane of a door and causing shards of glass to fly through the air and cut the victim. Id. at 829. Although the case proceeded on the reckless theory, the Appeals Court’s opinion not only points out that the Commonwealth was required to prove that a reasonable person in the defendant’s position would have recognized the dangers associated with the act of punching his fist through the window, but that it was necessary to establish that the defendant “utilized” the windowpane. Id. at 830. The issue is not whether the Third Rail was or could be a dangerous weapon. That is settled by the decision in Commonwealth v. Sexton, 425 Mass. 146 (1997), where the Supreme Judicial Court reversed the Appeals Court and held that concrete pavement used to bang the victim’s head against was a dangerous weapon even though it was part of the environment and could not be wielded by the assailant.
We do not agree with the Appeals Court that, to be a dangerous weapon, the defendant must be able to wield the item at issue, nor do we think it relevant that the pavement was present as part of the environment in which the defendant chose to participate in this assault. . . [I)t is obvious that one could employ concrete pavement, as the defendant and his brother did here, to cause serious bodily harm to another by banging the victim’s head against the hard surface. As the Commonwealth points out, there would be no problem in convicting a defendant of assault and battery by means of a dangerous weapon if he used a broken slab of concrete to bludgeon his victim. We see no reason to hold that such a conviction cannot stand merely because the instrumentality in question is a fixed thing at the time of its dangerous use.
Commonwealth v. Sexton, supra, 425 Mass. at 150-51. Commonwealth v. Sexton and Commonwealth v. McIntosh therefore stand for the proposition that whether the Commonwealth proceeds on the intentional or reckless theory of assault and battery by means of a dangerous weapon, it must prove that the defendant used the dangerous weapon to commit the crime, not simply that an injury was foreseeable as a result of the defendant’s behavior.
This point is illustrated by a footnote in the Sexton case. In Sexton, the Supreme Judicial Court distinguished language from the Appeals Court decision in Commonwealth v. Shea, 38 Mass.App.Ct. 7 (1995), in which the defendant was convicted of assault and battery by means of a dangerous weapon for pushing two women off of his boat at sea and abandoning them.
In Shea, a case in which the defendant pushed two women from his boat and sped off, leaving them five miles off shore, the Appeals Court found that, while “the ocean can be and often is dangerous, it cannot be regarded in its natural state as a weapon within the meaning of §15A,” because “in its natural state [it] cannot be possessed or controlled.” Commonwealth v. Shea, supra at 15-16. We believe that this is too narrow a reading of the instrumentality and use language we have employed when we have defined dangerous weapons as “an instrument or instrumentality which, because of the manner in which it is used, or attempted to be used, endangers the life or inflicts great bodily harm.” Commonwealth v. Farrell, supra at 615. While one might not *551 be able to possess the ocean or exercise authority over it in a traditional sense, Commonwealth v. Shea, supra at 16, one could certainly use it to inflict great harm, such as by holding another’s head underwater.
Sexton, 425 Mass. at 150. However, the court did not take issue with the holding in Shea that the Commonwealth had not proved an assault and batteiy by means of a dangerous weapon.
While we take issue with some of the reasoning in Shea, we do not necessarily disagree with the result the court reached in that case. In Shea, the danger posed by the ocean was not a result of the defendant bringing his victims into contact with that body of water, but rather the circumstances which followed when he deserted them, five miles from shore. We contrast this to a situation in which a defendant might drop his victim into a vat of acid, in which the mere contact with the substance would directly pose the risk of serious bodily harm.
Sexton, 425 Mass. at 152 n.1.
In the present case, the evidence establishes probable cause to believe that the defendants caused the victim to fall from the platform into the pit area. It is conceivable that a person could use the Third Rail to commit an assault and batteiy by means of a dangerous weapon just as a person could use an oncoming train. However, there is no evidence that in this case the defendants made use of the Third Rail in committing their crime; they did not push the victim towards it or otherwise cause him to walk or run into it. The question here does not simply turn on whether persons in the position of the defendants should have foreseen that someone pushed into the pit area might stumble into the Third Rail. Contrast, Commonwealth v. Joyce, 18 Mass.App. 417 (1984) (defendants who attacked victim without provocation were responsible for death of victim who was forced to run onto train tracks where he was struck and killed by a train). Rather, the question is whether the Commonwealth has presented evidence to the grand juiy that the defendants used the Third Rail in committing the crime. Cf. People v. Jackson, 58 A.D.2d 762, 396 N.Y.S.2d 242 (1977) (evidence that the victim was injured when she jumped through a glass window to escape from an attempted rape did not support a prosecution for assault by means of a dangerous weapon).
This makes it unnecessary for the court to discuss the argument made by defendant Hickey that there was not sufficient evidence that he was a joint venturer with respect to the conduct charged in count three of the indictments.[3]
CONCLUSION
For the above reasons, the defendants’ motions to dismiss count three of the indictments charging them with Assault and Batteiy by Means of Dangerous Weapon to wit, the Electrical Third Rail and Causing Serious Bodily Injuiy is ALLOWED.

This standard offers no sure mechanical guide for assessing sufficiency, but it has been employed primarily to strike down indictments in cases where a grand jury has heard no evidence identifying the defendant as the perpetrator of an offense or where the grand jury has heard no evidence whatever that would support an inference of the defendant’s involvement.” Commonwealth v. Truong Vo Tam, 49 Mass.App.Ct. 3, 37 (2000) (citations omitted).

For the reasons set forth in the Commonwealth’s Opposition to the Defendants’ Motion to Dismiss, there is no merit to the defendants’ further argument that the Commonwealth impaired the integrity of the grand jury by not introducing exculpatory evidence. Not every item of evidence that may be regarded as favorable to the defendant must be presented to the grand jury, and the Commonwealth is under no obligation to offer the testimony of each potential witness. See Commonwealth v. Kelcourse, 404 Mass. 466, 468 (1989).

Of course, this result does not preclude the Commonwealth from making a new presentation to the Grand Jury if additional evidence is available that suggests the defendants used the Third Rail to commit an assault and battery.