## COMMONWEALTH *VS.* LAJUAN MELTON.

Plymouth. November 6, 2001. - March 13, 2002.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Assault by Means of a Dangerous Weapon. Intent. Joint Enterprise. Evidence,*
Intent, Joint enterprise.

Evidence at a criminal trial was sufficient to convict the defendant of four
counts of assault by means of a dangerous weapon on a theory of at-
tempted battery for his firing a single gunshot at a moving vehicle contain-
ing four passengers, where there was abundant evidence of an intent to
batter at least one of the four passengers, an overt act was taken in further-
ance of that intent, and it came reasonably close to succeeding; the Com-
monwealth did not have to show the requisite mens rea separately or
independently for each victim, because once established as to any victim,
the showing satisfied the intent element with respect to all victims, even if
those victims were unintended or even unknown to the defendant.
[294-300]
Evidence at a criminal trial was sufficient to warrant submission of the case
against the defendant to the jury on the theory that he was a principal or a
joint venturer, despite a witness's effective retraction of his earlier
identification of the defendant. [300-301]

COMPLAINT received and sworn to in the Brockton Division of
the District Court Department on April 3, 1998.

The case was tried before *Richard D. Savignano*, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Patricia A. O'Neill*, Committee for Public Counsel Services,
for the defendant.

*Patrick C. Lee*, Special Assistant District Attorney, for the
Commonwealth.

SOSMAN, J. The defendant was convicted of unlawful posses-
sion of a firearm and ammunition, malicious damage to a motor
vehicle, and four counts of assault by means of a dangerous
weapon. On appeal, he contends that the evidence was insuf-
ficient to convict him of all four assaults because the perpetra-

tor, by firing only a single shot into a vehicle occupied by four persons, could not have intended to commit more than a single battery by means of that shot. He also contends that there was insufficient evidence to convict him either as a joint venturer or as a principal for the assaults and the malicious damage to a motor vehicle.[1] The Appeals Court affirmed the convictions. *Commonwealth* v. *Melton*, 50 Mass. App. Ct. 637 (2001). We granted the defendant's application for further appellate review. For the following reasons, we affirm the convictions.

1. *Facts.* Viewing the evidence in the light most favorable to the Commonwealth, see *Commonwealth* v. *Latimore*, 378 Mass. 671, 677-678 (1979), the jury could have found as follows. On the evening of April 1, 1998, David Benedict, the defendant and two other companions were standing outside a bar on Main Street in Brockton. Another group of young men drove by in a Honda Accord. Among that group was Daniel Marcellus, who had had previous disputes with both the defendant and Benedict. The defendant's group gestured at the passing vehicle in a manner that suggested a desire to fight. The vehicle turned around; Marcellus and his companions got out; and ultimately it was decided that Marcellus and the defendant would fight "one on one." The defendant then removed a gun from his pants. Marcellus recognized the gun as one that he had seen Benedict use during a confrontation a few weeks earlier. The defendant wrapped the gun in his sweatshirt, went into the bar or an adjacent alley momentarily, and then returned without the bundled clothing (and presumably without the gun). No one saw Benedict with a gun.

The defendant and Marcellus proceeded with their fight while the others watched. After some period, the two combatants separated. The defendant was "winded" and "tired," but his friends were encouraging him to resume the fight. He appeared reluctant to do so. At that point, the police arrived. The participants were questioned, but no one was arrested. After the police advised the young men to go their separate ways, Marcellus and his group left in their car, with Marcellus seated in the back seat, behind the driver.

---

[1] The defendant raises no issue with respect to the convictions of unlawful possession of a firearm and ammunition.

Marcellus and his companions dropped off one member of their group at his home. At that point, Marcellus took over driving. One passenger was seated in the front seat, and the other two were in the back seat. The driver's side rear passenger seat, which Marcellus had occupied when they left the scene of the fight, was now occupied by his brother.

Driving along, approximately twenty minutes after the conclusion of the fight, Marcellus noticed another vehicle, an older model blue Chrysler, approaching rapidly. (The same vehicle had been seen at the site of the earlier fight.) The Chrysler pulled alongside, and a hand reached out the rear passenger side window pointing a gun at the Honda. Marcellus described the hand as "light-skinned." He recognized the weapon as the one that the defendant had possessed at the start of their fight.

A single shot was fired, shattering the rear driver's side window of the Honda. None of the occupants of the vehicle was hit by the bullet. They were hit by fragments of broken glass. Marcellus looked over at the Chrysler and saw Benedict in the rear driver's side seat and the defendant in the rear passenger side seat. The driver and the front seat passenger were the other two young men who had been with the defendant at the time of the earlier fight. After the one gunshot, the Chrysler sped away. Marcellus attempted pursuit, but was convinced by his companions to go to the police instead. They proceeded to the police station, where Marcellus told the police that he thought the defendant was the shooter.

At school the next day, Marcellus spoke with the defendant's girl friend. She told him that Benedict was the shooter, not the defendant. Marcellus heard similar rumors from other classmates. Marcellus then began to doubt his identification of the defendant as the shooter because the hand he had seen holding the gun out the window was "light-skinned," whereas the defendant was more "dark-skinned." By the time of his grand jury testimony, Marcellus told the investigating officers that he was not sure of the identity of the shooter, but that it probably was Benedict, not the defendant. At trial, Marcellus testified that what he heard from others concerning Benedict's identity as the shooter made "more sense" to him, and he opined that it "probably really wasn't" the defendant who shot at the car. He

did, however, confirm that he had initially identified the defendant as the shooter.

2. *Intent to batter four victims.* The defendant was charged with a separate count of assault by means of a dangerous weapon committed on each of the four occupants of the Honda. The defendant argues that he cannot be found guilty of four counts of assault by means of a dangerous weapon because there was not sufficient evidence of any intent to batter all four alleged victims. Because it would have been physically impossible to hit all four victims with a single shot, he contends that the perpetrator could not have had the intent to batter four people.[2] The defendant's argument misapprehends our jurisprudence on the element of intent.

Under the common law, an assault may be perpetrated in either of two ways.[3] The crime may consist of "an attempted battery" or "an immediately threatened battery." *Commonwealth* v. *Gorassi*, 432 Mass. 244, 247 (2000), and cases cited. *Commonwealth* v. *Musgrave*, 38 Mass. App. Ct. 519, 521 (1995), *S.C.*, 421 Mass. 610 (1996). The crime of assault by means of a dangerous weapon adds one additional element, namely, that the assault was perpetrated by means of a dangerous weapon. G. L. c. 265, § 15B (*b*). The judge instructed the jury on both types of assault, and, if the defendant were found guilty, the judge's instructions required the jury to specify on the verdict slip which type of assault had been proved. See *Commonwealth* v. *Accetta*, 422 Mass. 642, 646-647 (1996). On each of the four indictments for assault by means of a dangerous weapon, the jury returned a verdict that the defendant was guilty, specifying

---

[2]The argument now raised by the defendant was not presented below in support of his motion for required finding of not guilty. We therefore review to determine whether there was error and, if so, whether such error created a substantial risk of a miscarriage of justice. Convictions based on insufficient evidence "are inherently serious enough to create a substantial risk of a miscarriage of justice." *Commonwealth* v. *McGovern*, 397 Mass. 863, 867-868 (1986).

[3]The statute sets forth the punishment for the crime of assault by means of a dangerous weapon, but does not define the crime. G. L. c. 265, § 15B (*b*). *Commonwealth* v. *Slaney*, 345 Mass. 135, 138 (1962). *Commonwealth* v. *Musgrave*, 38 Mass. App. Ct. 519, 521 (1995), *S.C.*, 421 Mass. 610 (1996). Therefore, we look to the common law for the definition of the crime of assault. *Commonwealth* v. *Slaney, supra.*

that they had based each verdict on the "attempted battery" form of assault.[4]

Under the attempted battery theory, the Commonwealth must prove that the defendant intended to commit a battery, took some overt step toward accomplishing that intended battery, and came reasonably close to doing so. See *Commonwealth* v. *Musgrave, supra* at 520 n.2, quoting Model Jury Instructions for Criminal Offenses Tried in the District Court Department § 5.402 (1988). The defendant concedes, as he must, that a single act can result in multiple convictions if there are multiple victims. "[T]he appropriate 'unit of prosecution' for such crimes [of violence] is the person assaulted or killed, not the underlying criminal act." *Commonwealth* v. *Crawford*, 430 Mass. 683, 686-687 (2000), quoting *Commonwealth* v. *Donovan*, 395 Mass. 20, 31 (1985). See *Commonwealth* v. *Gordon*, 41 Mass. App. Ct. 459, 465 (1996); *Commonwealth* v. *Dello Iacono*, 20 Mass. App. Ct. 83, 89-90 (1985).

Rather, the defendant challenges the sufficiency of the evidence only with respect to the element of intent. He contends that the single shot could not hit all the occupants of the car, and asks us to hold that his intent cannot have exceeded what the laws of physics would permit that single shot to accomplish.[5] Of course, while the laws of physics may determine the extent of injury or physical damage accomplished by a person's act, the perpetrator's intent is not necessarily so constrained. A

---

[4]The defendant concedes that the evidence was sufficient to establish the "immediately threatened battery" form of assault as to all four victims. To establish that form of assault, the Commonwealth must prove that the defendant intentionally engaged in menacing conduct that reasonably caused the victim to fear an imminent battery. *Commonwealth* v. *Musgrave, supra* at 520 n.2, quoting Model Jury Instructions for Criminal Offenses Tried in the District Court Department § 5.402 (1988). A single shot in the direction of a group of people is intentionally menacing conduct that can cause each person reasonably to fear an imminent battery.

[5]While the defendant is correct that the single shot could not have hit all four occupants, he is incorrect in his assertion that the single shot could not have hit more than one occupant. The apparent path of the bullet was straight across the back seat, entering at one rear window and continuing out the opposite rear window. Two persons were in that back seat at the time. Both could have been hit by a single bullet traveling along that path. The defendant's argument, even if correct, would reduce the number of assault convictions to two, not to one.

person can intend things that are hopelessly unrealistic or even absurd. In that sense, we reject the fundamental premise of the defendant's argument. The impossibility of particular consequences may be argued as a basis for concluding that a defendant did not harbor the requisite intent, but it does not compel the jury to reach that conclusion.[6]

More fundamentally, however, the defendant's argument erroneously assumes that the intent element requires the Commonwealth to prove an intent to batter each and every one of the victims in order for there to be multiple assaults. That assumption is inconsistent with our treatment of intent in other contexts. We have never required that a defendant's intent be directed at the precise victim of the crime. Rather, we have long recognized the concept of "transferred intent" in situations where the defendant's conduct harms a person other than the intended victim. See *Commonwealth* v. *Fisher*, 433 Mass. 340, 345-346 (2001), and cases cited.

In most other jurisdictions, the same principle of transferred intent applies to satisfy the element of intent when a defendant harms both the intended victim and one or more additional but unintended victims. See, e.g., *United States* v. *Sampol*, 636 F.2d 621, 674 (D.C. Cir. 1980) (evidence sufficient to support two convictions of murder in the first degree where defendant killed two people, even though defendant only intended to kill one of them, noting that "[t]here are even stronger grounds for applying the principle [of transferred intent] where the intended victim is killed by the same act that kills the unintended victim"); *State* v. *Worlock*, 117 N.J. 596, 616-617 (1990) (same); *State* v. *Hinton*, 227 Conn. 301, 306-311 (1993) (transferred intent doctrine applicable to support three counts of murder even if defendant only intended to kill one victim); *State* v. *Fennell*, 340 S.C. 266, 276 (2000) (where defendant shot and killed intended victim but one bullet struck and seri-

---

[6]Here, an intention to harm persons in addition to Marcellus could be inferred from the evidence, notwithstanding the physical impossibility of hitting all of them with a single shot. While Marcellus was presumably the principal object of the defendant's vengeance, the jury could infer that the defendant bore ill will to Marcellus's companions as well. They were affiliated with Marcellus, and all of them had just witnessed the defendant's unwillingness to continue fighting Marcellus.

ously injured unintended victim, doctrine of transferred intent supported convictions of both murder of intended victim and assault and battery with intent to kill unintended victim); *Ochoa* v. *State*, 981 P.2d 1201, 1205 (Nev. 1999) (same); *State* v. *Gillette*, 102 N.M. 695, 705 (Ct. App. 1985) (defendant, who delivered poisoned drink to one intended victim, guilty of three counts of attempted murder when intended victim and two others consumed it); *State* v. *Henley*, 141 Ariz. 465, 467 (1984) (transferred intent doctrine would support two counts of aggravated assault where single shot intended for one victim struck two persons); *Mordica* v. *State*, 618 So. 2d 301, 303 (Fla. Dist. Ct. App. 1993) (where defendant kicked fellow inmate and inadvertently kicked officer who was attempting to break up fight, defendant's convictions of two batteries upheld); *State* v. *Livingston*, 420 N.W.2d 223, 229 (Minn. Ct. App. 1988) (where defendant commanded his dog to bite intended victim and dog attacked two other persons as well, transferred intent applicable to support three counts of assault). See also *State* v. *Wilson*, 125 Wash. 2d 212, 217-218 (1994) (where defendant shot at and missed both intended victims but struck and injured two unintended victims, he committed four assaults because he met statutory requirement that he act "with intent to inflict great bodily harm" and statute did not require that "the specific intent match a specific victim").[7]

Thus, a defendant's intent is deemed to extend to others

---

[7] A minority of jurisdictions refuse to apply the doctrine of transferred intent if the defendant has succeeded in perpetrating the intended crime on the intended victim. See *People* v. *Birreuta*, 162 Cal. App. 3d 454, 460 (1984); *Ford* v. *State*, 330 Md. 682, 710-715 (1993). Under that analysis, the doctrine of transferred intent is used only to prevent a defendant from obtaining a windfall due to his own poor aim or other miscalculation, and its sole purpose "is to insure the adequate punishment of those who accidentally kill innocent bystanders, while failing to kill their intended victims." *People* v. *Birreuta*, *supra*. Thus, as long as the crime is completed against the intended victim, the minority is of the view that "there is no need for such an artificial doctrine" in order to obtain a conviction. *Id.* Like the majority of courts that have considered the issue, we are not persuaded by this analysis. The doctrine of transferred intent is not simply a pragmatic device to make sure that a culpable defendant does not avoid all prosecution. Rather, it also serves to recognize that everyone injured or killed by the defendant, whether they were the intended object of his intentional crime or not, are in fact victims. The defendant has acted with the requisite intent as to at least one person, but all persons injured or killed are appropriately viewed as victims of that crime. To

beyond the actual intended victim. It is not exhausted or depleted based on the perpetration of the crime on the intended victim, but encompasses completely unintended victims (including victims of whom the defendant was unaware) who happen to suffer along with the intended victim. See *State* v. *Hinton, supra* at 306 n.8 (defendant's intent to harm one victim "is not regarded as a limited commodity that, once satisfied, is totally expended"). Thus, the requisite mens rea must be shown, but it does not need to be shown separately or independently for each victim. Rather, once established as to any victim, it satisfies that element with respect to all other victims, even if those victims are unintended or even unknown to the defendant.

We recognize that, in most of the cases cited above, the unintended victims were actually struck, injured, or killed by the defendant.[8] That fact, however, has nothing to do with intent or with transferred intent. It merely affects whether the crime is one of assault and battery or only assault. If the bullet apparently intended for Marcellus had struck one of the other occupants of the car, either in addition to or instead of Marcellus himself, the doctrine of transferred intent would have made the unintended victim a victim of assault and battery by means of a dangerous weapon. Where, as it happened, the bullet narrowly missed Marcellus and the other occupants, they are victims of assault by means of a dangerous weapon. Both crimes require a showing of intent, and the doctrine of transferred intent applies without regard to whether the attempted battery was successful.

There was abundant evidence of an intent to batter at least one person, most likely Marcellus.[9] An overt act was taken in furtherance of that intent, and it came reasonably close to

hold that a defendant who succeeds in perpetrating a crime on his intended victim cannot commit any form of intentional crime against anyone who is not his actual intended victim fails to recognize the harm perpetrated on others who are unfortunate enough to be injured or killed by the defendant's criminal conduct.

[8]The doctrine has been applied to purely attempt crimes in at least one case. See *State* v. *Gillette,* 102 N.M. 695, 705 (Ct. App. 1985) (three counts of attempted murder even though defendant only intended to poison one person).

[9]Although the shot was fired into the back seat when Marcellus was in the driver's seat, Marcellus had been sitting in the back seat at the time the defendant and his companions had seen Marcellus leave the scene of the fight. Driving up rapidly from behind on what some witnesses described as a misty

succeeding. All persons within close proximity to that shot suffered equally with the intended victim. All four were imperiled by the shot, to at least the same extent as the intended victim. While the Commonwealth does not have to prove that an attempted battery actually instilled fear in the victim, see *Commonwealth* v. *Gorassi*, 432 Mass. 244, 248 (2000), all four victims here were aware of the shot, several of them were struck by shattered glass from the bullet piercing the rear window, and all suffered at least the same fear as the intended victim.[10] They were all victims of the attempted battery, even if the perpetrator's intent focused on only one of them.[11]

Beyond the metaphysics of transferred intent, we note that treating the defendant's actions as four assaults by means of a dangerous weapon is consistent with the purposes underlying the common law of assault. An attempted but unsuccessful battery is criminal not because it actually harms the victim — indeed, the victim can be completely unaware of the attempt — but rather because it imperils the victim. The conduct here (a shot into a car full of people, fired at point blank range from a passing vehicle traveling at high speed) placed four people in equally grave peril. Limiting the number of convictions to the precise number of victims the defendant intended to hit ignores the additional persons whose lives were placed at risk by the defendant's attempt to batter his intended victim. The suggestion that they were not victims of any crime, when they all suffered the very peril that the crime of assault by means of a dangerous weapon is intended to address, is contrary to common sense.

Similarly, it would be anomalous to hold that, had the

night, the perpetrator may well not have realized that it was Marcellus's brother, not Marcellus, in the back seat.

[10]The passengers in the car advised Marcellus not to follow the defendant's car because they were afraid that another shot would be fired if Marcellus maintained the pursuit.

[11]The judge did not instruct the jury on transferred intent. There was no objection by either side. The absence of such an instruction did not create a substantial risk of a miscarriage of justice. To the contrary, the absence of an instruction on transferred intent can only help a defendant, as the jury may then mistakenly assume that the Commonwealth has to prove intent specifically directed at each actual victim. An instruction on transferred intent clarifies that the Commonwealth need only prove intent as to one of the victims.

defendant merely waved the gun in the direction of the Honda with a menacing gesture or remark, he would be guilty of four assaults by means of a dangerous weapon (because his intentionally menacing conduct would have been directed at and instilled fear in four people), but that an actual shot at those same four people could only constitute a single assault. Rather, a person is a victim of assault if he is at risk of battery from the defendant's attempted battery on anyone, just as the person would be a victim of assault if he were placed in fear of battery from the defendant's intentionally threatened battery on anyone. The peril and the fear inflicted by such conduct is what makes one a victim of assault, and, as long as the defendant has the requisite mens rea with regard to any person, the defendant may be convicted of as many separate assaults as there are victims.

Therefore, we conclude that there was sufficient evidence to prove four counts of assault by means of a dangerous weapon on a theory of attempted battery.

3. *Sufficiency of the evidence as to principal or joint venturer liability.* The defendant contends that, in light of Marcellus's effective retraction of his earlier identification of the shooter, there was not sufficient evidence to convict him as the principal. We agree with the Appeals Court's analysis on this point. See *Commonwealth* v. *Melton*, 50 Mass. App. Ct. 637, 643-646 (2001). Marcellus acknowledged that he had originally identified the defendant as the shooter; he acknowledged that his retraction of that identification was based at least in part on rumor and hearsay from persons who were partial to the defendant; and the jury could have been skeptical of his claimed ability to distinguish subtle differences in skin tone (the ostensible basis for his retraction) when he had seen only the perpetrator's hand briefly as the car sped by on a foggy night. Meanwhile, there was circumstantial evidence pointing to the defendant as the likely perpetrator. He had the strongest motive to attack Marcellus (hostility from the earlier fight); the weapon used to perpetrate the assaults had been seen in his possession earlier that evening; and he was seated closest to the window from which the shot was fired.

We also agree with the Appeals Court that there was sufficient evidence to submit the case to the jury on the alternative

theory of joint venture. *Id.* at 646-647. The defendant was present at the scene; the jury could infer the requisite shared intent from both Benedict's and the defendant's hostility toward Marcellus; and, based on the defendant's supplying a weapon to Benedict (if Benedict were in fact the shooter), the jury could infer the defendant's willingness to assist Benedict in perpetrating the crimes.

*Judgments affirmed.*