COMMONWEALTH *vs.* CEDRIC R. LEDNUM.

No. 08-P-1247.

Bristol. October 16, 2009. - November 9, 2009.

Present: KANTROWITZ, SMITH, & GRAHAM, JJ.

*Assault and Battery by Means of a Dangerous Weapon. Dangerous Weapon. Gas. Words,* "Dangerous weapon."

At a trial of indictments charging assault and battery by means of a dangerous weapon, the evidence was sufficient to support the fact finder's conclusion that natural gas, as used by the defendant, constituted a dangerous weapon, where the defendant uncapped a gas line and turned it on, releasing gas into a house in which he knew people were sleeping. [724-725]

At the trial of indictments charging assault and battery by means of a dangerous weapon, the evidence was sufficient to sustain the defendant's convictions of the lesser included offense of assault by means of a dangerous weapon, where the defendant's actions (i.e., uncapping a gas line and turning it on, thereby releasing gas into a house in which he knew people were sleeping) fit comfortably within either of the Commonwealth's two common-law theories of attempted battery or threatened battery. [725]

INDICTMENTS found and returned in the Superior Court Department on February 17, 2005.

The cases were tried before *D. Lloyd Macdonald*, J.

*Elaine Pourinski* for the defendant.

*Kristen L. Spooner*, Assistant District Attorney, for the Commonwealth.

KANTROWITZ, J. Today we hold that natural gas, as used here, is a dangerous weapon. As such, the defendant was properly convicted.

*Facts.* A day before Christmas, 2004, the defendant, Cedric R. Lednum, learned that his wife was seeking a divorce. He reacted by informing her that he was going to quit his job and resume smoking. Given his history of drinking, substance abuse, and verbal violence, his "bizarre" tone during the conversation

frightened his wife, prompting her to change the locks on the house.

Three days later, on December 27, 2004, at approximately 5:30 A.M., the defendant called his wife and offered to plow her driveway so she could get to work. After he finished plowing, and his wife had left for work, the defendant called her again, asking to use the bathroom. The wife gave her permission, but told the defendant to be quiet, since her two adult daughters and three of their friends were sleeping in the house.

The defendant entered and proceeded to the basement, which was in the process of being remodeled and had an exposed gas line that was turned off and covered with a cap. Shortly after, his sleeping stepdaughter awoke, came out of her room and, seeing the defendant holding an almost empty bottle of tequila, asked him what he was doing. Smiling, he replied, "catching a buzz." She then asked about the "hissing noise," and the defendant laughed and told her "it was the gas."

Smelling the gas, the stepdaughter headed upstairs. Midway to the first floor, she turned to see the defendant crouching by the gas pipe. He said that he was trying to "spigot this." Once upstairs, the stepdaughter woke her sister, telling her "[the defendant's] in the house and I think he's trying to kill us." The two sisters quickly woke their three sleeping friends. Smelling the gas, all fled.

Shortly after, a fire erupted in the basement. Ultimately, a police officer and a firefighter had to drag the defendant out of the burning basement. As they did so, the defendant pulled out a pocket knife and slashed his wrist. At about the same time, a New England Gas Company employee, fortuitously in the area, noticed smoke coming out of the house, checked the meter, saw that the dial on it was "spinning rapidly," and turned it off. The meter activity "indicated there was either a broken or open pipe, or a severe condition in the house."

At trial,[1] a fire investigator determined that the fire was caused by the escaping gas.

---

[1]The defendant was charged with five counts of assault and battery by means of a dangerous weapon (convicted of the lesser included offenses of assault by means of a dangerous weapon); five counts of assault with intent to murder (found not guilty); and one count of wilfully and maliciously setting fire to a dwelling (found guilty).

*Natural gas as a dangerous weapon.* The term "dangerous weapon" encompasses two categories: (1) weapons that are dangerous per se, "instrumentalities designed and constructed to produce death or great bodily harm," e.g., firearms, daggers, and brass knuckles; and (2) objects that are dangerous as used. *Commonwealth* v. *Appleby,* 380 Mass. 296, 303-304 (1980).

The determination whether an object fits within the latter category is made by the fact finder, "and involves not only consideration of any evidence as to the nature and specific features of the object but also attention to the circumstances surrounding the assault and the use of the object, and the manner in which it was handled or controlled." *Commonwealth* v. *Tevlin,* 433 Mass. 305, 310 (2001), quoting from *Commonwealth* v. *Marrero,* 19 Mass. App. Ct. 921, 922 (1984).

Various objects have been found to fit the "dangerous as used" category. See *Commonwealth* v. *Farrell,* 322 Mass. 606 (1948) (lit cigarette); *Commonwealth* v. *Tarrant,* 367 Mass. 411 (1975) (German shepherd dog); *Commonwealth* v. *Appleby, supra* (riding crop); *Commonwealth* v. *Cruz,* 430 Mass. 182 (1999) (duct tape); *Commonwealth* v. *Wolinski,* 431 Mass. 228 (2000) (flashlight, motorcycle chain); *Commonwealth* v. *LeBlanc,* 3 Mass. App. Ct. 780 (1975) (car door); *Commonwealth* v. *Barrett,* 12 Mass. App. Ct. 1001 (1981) (aerosol spray can); *Commonwealth* v. *Marrero, supra* (footwear); *Commonwealth* v. *McIntosh,* 56 Mass. App. Ct. 827 (2002) (windowpane). Contrast *Commonwealth* v. *Shea,* 38 Mass. App. Ct. 7 (1995) (ocean not a dangerous weapon).

Here, the defendant uncapped the gas line and turned it on, releasing gas into the house, where he knew several people were sleeping. The gas line, and hence the gas itself, was entirely under the defendant's control while he used it in a manner foreign to its intended use.

The danger of gas escaping into homes has historically been recognized. See *Barbeau* v. *Buzzards Bay Gas Co.,* 308 Mass. 245, 247 (1941) ("dangerous character of gas"); *Wright* v. *Northampton Gas Light Co.,* 341 Mass. 461, 464 (1960) (natural gas "an inherently dangerous substance"); *Yukna* v. *Boston Gas Co.,* 1 Mass. App. Ct. 62, 66 (1973) (great "danger of explosion when gas escapes into" cellar).

The defendant asserts that his use of gas does not qualify as a dangerous weapon because he did not seal the house, prevent the victims from opening the window, or stop them from leaving the premises. We disagree. He turned on the gas in the house knowing there were people sleeping inside. Those people awoke, smelled the gas, and fled the obvious danger. As used, the gas constituted a dangerous weapon.

*Proof of assault.* The defendant also argues that the Commonwealth failed to provide sufficient evidence to prove assault under either of its two common-law theories: attempted battery or threatened battery. See *Commonwealth* v. *Gorassi*, 432 Mass. 244, 247 (2000). Little discussion is merited.

Under common law, proof of attempted battery must include evidence that "the defendant intended to commit a battery, took some overt step toward accomplishing that intended battery, and came reasonably close to doing so." *Commonwealth* v. *Melton*, 436 Mass. 291, 295 (2002). See *Commonwealth* v. *Musgrave*, 38 Mass. App. Ct. 519, 520 n.2 (1995), *S.C.*, 421 Mass. 610 (1996). The critical element is the potential harm to which the victim was exposed. See *Commonwealth* v. *Melton, supra* at 299 ("An attempted but unsuccessful battery is criminal not because it actually harms the victim — indeed, the victim can be completely unaware of the attempt — but rather because it imperils the victim").

To prove threatened battery, the Commonwealth must show that the defendant "engaged in 'objectively menacing' conduct with the intent to put the victim in fear of immediate bodily harm." *Commonwealth* v. *Gorassi, supra* at 248, quoting from *Commonwealth* v. *Musgrave, supra* at 524 n.7. See *Commonwealth* v. *Chambers*, 57 Mass. App. Ct. 47, 49 (2003).

We need not revisit the facts. Suffice it to say that the actions of the defendant fit comfortably within either definition.[2]

*Judgments affirmed.*

---

[2]Likewise, the defendant's last assertion concerning inconsistent verdicts is without merit.