## COMMONWEALTH vs. JORGE ARIAS.

No. 09-P-1792.

Middlesex. October 20, 2010. - December 15, 2010.

Present: TRAINOR, MEADE, & SIKORA, JJ.

*Assault and Battery by Means of a Dangerous Weapon. Practice, Criminal,*
Verdict, Identification of defendant in courtroom. *Identification.*

At the trial of a criminal complaint charging the defendant with, inter alia, as-
sault by means of a dangerous weapon, in which the judge instructed the
jury that an assault could be committed as either an attempted battery or an
immediately threatened battery, no substantial risk of a miscarriage of
justice arose from the fact that the jury were not provided with a special
verdict slip to indicate on which "theory" their verdict relied, where the
methods of committing an assault are not distinct theories of how the
crime might be committed [431-433]; further, the evidence was sufficient
to permit a rational fact finder reasonably to conclude that both an at-
tempted battery and a threatened battery had occurred [433-435].
At a criminal trial, the judge did not abuse his discretion in denying the
defendant's pretrial request for a nonsuggestive in-court identification
procedure, where there was no suggestion that the witness's out-of-court
identification was unreliable. [435-437]

COMPLAINT received and sworn to in the Malden Division of
the District Court Department on February 28, 2007.

The cases were tried before *Matthew J. Nestor*, J.

*Kevin R. Prendergast* for the defendant.

*James D. Livingstone*, Assistant District Attorney, for the
Commonwealth.

MEADE, J. After a jury trial, the defendant was convicted of
larceny over $250 in violation of G. L. c. 266, § 30; assault by
means of a dangerous weapon in violation of G. L. c. 265,
§ 15B(*b*); reckless operation of a motor vehicle in violation of
G. L. c. 90, § 24(2)(*a*); and failure to stop for a police officer
in violation of G. L. c. 90, § 25. On appeal, the defendant claims
that the absence of a special verdict slip for the charge of assault

by means of a dangerous weapon created a substantial risk of a miscarriage of justice; that there was insufficient evidence to support his conviction of assault by means of a dangerous weapon; and that the judge abused his discretion by denying the request for a "non-suggestive in-court identification procedure." We affirm.

1. *Background.* On February 17, 2007, Everett police Officer Jason Leonard was working a paid detail at a Home Depot store. Shortly before 8:00 P.M., Leonard saw the defendant throw several boxes over a chain link fence in the garden section of the store, and then walk back inside the store.[1] Leonard, who was in uniform, walked outside to his personal truck and drove it to the area where the boxes had been thrown. There, Leonard saw a dark pickup truck with its headlights off pull up to where the boxes had been thrown. The defendant got out of the truck and was reaching for one of the boxes when Leonard drove up and parked his truck so that the two trucks were facing one another. The defendant dropped the box, ran back to the truck, got into the front seat, and "threw" the truck into drive. The truck "lurched forward" towards Leonard. Leonard, fearing for his life, pulled out his service weapon, pointed it at the defendant, and demanded that he stop. The defendant yelled, "I didn't do anything," put his truck in reverse, and drove off, spinning his tires.

Leonard saw the defendant's face "clearly" during the incident because he had his truck's headlights on whereas the defendant's truck's headlights were turned off. In the garden section of the store, Leonard had watched the defendant for approximately five minutes and their face-to-face confrontation outside the store lasted for fifteen seconds. He testified that he would "never forget [the defendant's] face"; he had "an imprint of [the defendant's] face burned in [his] memory" given that he had had to draw his weapon on him. Leonard had "no doubt" about his identification of the defendant.

After the defendant drove off, Leonard broadcast a physical description of the defendant and the truck. Leonard blocked one of the exits in the parking lot, and several police cruisers pursued

---

[1] The total value of the merchandise inside the boxes was $816.

the defendant around the parking lot. The defendant did not stop. After a few minutes, the defendant was able to escape from the parking lot and led the police on a high speed chase. When the pursuit reached the Tobin Bridge in Boston, it was called off because it was too dangerous. Minutes later, Boston police stopped the defendant in the East Boston section of Boston. Leonard identified the defendant at the scene, and Everett police Officer Christopher Hannon, who had taken part in the chase, identified the truck.

In his defense, the defendant called his brother-in-law, Jose Palacio, who testified to ownership of the truck at issue, and that the defendant borrowed it on February 17, 2007. According to Palacio, the truck was incapable of driving more than forty miles per hour, and the defendant arrived home that night at 8:30 P.M., only moments before the police arrived. In addition, the defendant testified that he was working or driving directly home from work during the time of the larceny and the police chase. He also testified that no property of Home Depot was recovered from the truck he drove and that he never used the Tobin Bridge.

2. *Discussion.* a. *Special verdict slip.* The defendant claims that because the judge instructed the jury on both theories of assault as part of his instruction on assault by means of a dangerous weapon, but there was not sufficient evidence to support both "theories," the jury should have been provided a special verdict slip to indicate on which theory their verdict relied. Because the defendant did not raise this claim at trial, we review it on appeal only to determine if the lack of a special verdict slip created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman,* 352 Mass. 556, 563-564 (1967). As discussed below, because there was no error, there is no risk that justice miscarried.

The judge instructed the jury that an assault could be committed as either an attempted battery or an immediately threatened battery. This was a correct statement of our common law. See *Commonwealth* v. *Gorassi,* 432 Mass. 244, 247 (2000). According to the notes following the model jury instruction for assault, which provides the genesis of the defendant's claim, a special verdict slip is required if both "theories" of culpability are

submitted to the jury. See Criminal Model Jury Instructions for Use in the District Court, Instruction 6.120 (Mass. Cont. Legal Educ. 2009). This, however, is incorrect.

The starting point for our analysis is that a jury verdict in a criminal case "must be unanimous." *Commonwealth* v. *Berry*, 420 Mass. 95, 111 (1995), quoting from *Commonwealth* v. *Hebert*, 379 Mass. 752, 754 (1980). In some circumstances, a general unanimity instruction[2] and a general verdict slip will not be sufficient "to ensure the requisite unanimity." *Commonwealth* v. *Santos*, 440 Mass. 281, 284 (2003). *Commonwealth* v. *Lonardo*, 74 Mass. App. Ct. 566, 571 (2009). In particular, a defendant is entitled to a specific unanimity instruction "when the Commonwealth has proceeded on 'alternate theories' " of guilt, defined as "separate, distinct, and essentially unrelated ways in which the same crime can be committed." *Commonwealth* v. *Santos, supra* at 287-288. Some examples are cases where the defendant is charged with differing theories of murder in the first degree, i.e., deliberate premeditation, extreme atrocity and cruelty, and felony-murder, see *Commonwealth* v. *Berry, supra* at 112, and where the defendant is charged with both voluntary and involuntary manslaughter, see *Commonwealth* v. *Accetta*, 422 Mass. 642, 646 (1996).[3] Another example is when, on a single charged offense, the Commonwealth presents evidence of separate, discrete incidents, any one of which would suffice by itself to make out the crime charged. In that circumstance, the jury must all agree as to at least one, specific incident in order to find the defendant guilty. See *Commonwealth* v. *Conefrey*, 420 Mass. 508, 513-514 (1995).

The defendant claims that because the alternate forms of

---

[2]The defendant does not make the companion claim that the judge should have instructed the jury that they had to be unanimous as to the theory of the assault. See *Commonwealth* v. *Berry, supra* at 112. In any event, our analysis would be the same if he had raised such a claim.

[3]The notes to the model jury instruction on assault erroneously claim support in *Commonwealth* v. *Accetta, supra* at 646, for the instruction's stated requirement of a special verdict slip. See Criminal Model Jury Instructions for Use in the District Court, Instruction 6.120, *supra.* However, unlike the two forms of assault, described more fully in part 2.b., *infra*, voluntary and involuntary manslaughter are mutually exclusive, as one cannot kill both intentionally and unintentionally at the same time. *Commonwealth* v. *Santos, supra* at 288.

assault contain different "theories," i.e., attempted battery or immediately threatened battery, an assault may be committed in two separate, distinct, and unrelated ways. But that claim "erroneously elevates the related and overlapping subcategories of a single element into separate 'theories.' " *Commonwealth* v. *Santos, supra* at 286. The rule laid down in *Berry*, and developed in *Accetta*, does not automatically apply to every alternate method by which a single element may be proved; rather, it is restricted to cases where the alternative "theories" presented are "substantively distinct or dissimilar." *Commonwealth* v. *Santos, supra* at 289.

In the circumstances of an assault, the methods of committing an assault — attempted battery force or the threat of battery — are closely related and may work in combination. See *ibid.* See also *Commonwealth* v. *Porro*, 458 Mass. 526, 534 (2010). "These alternative methods of establishing a required element are not distinct 'theories' of how the crime may be committed, but are merely similar, equivalent types of conduct any one (or more) of which will suffice to prove a single element." *Ibid.* See *Commonwealth* v. *Laurore*, 437 Mass. 65, 82 (2002). A special verdict slip was not required on the charge of assault by means of a dangerous weapon.[4]

b. *Sufficiency of the evidence.* The defendant claims that there was insufficient evidence to support his conviction of assault by means of a dangerous weapon. When analyzing whether the record evidence is sufficient to support a conviction, an appellate court is not required to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt" (emphasis in original). *Commonwealth* v. *Velasquez*, 48 Mass. App. Ct. 147, 152 (1999), quoting from *Jackson* v. *Virginia*,

---

[4]The defendant further claims that the prejudice he suffered due to the absence of a special verdict slip was compounded by the fact that the verdict slip failed to list the alleged victim, and because the judge failed to instruct on the issue of "intent." The defendant cites no authority in support of either of these propositions, which renders them waived. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). Even if these claims were not waived, they were not preserved at trial. In any event, we note that the clerk read the complaint to the jury, which indicated that "Officer Jason Leonard" was the named victim of the assault by means of a dangerous weapon. Also, the judge's instruction on assault, which tracked the language of the model jury instruction, set forth that both forms of an assault required intentional conduct by the defendant.

443 U.S. 307, 318-319 (1979). See *Commonwealth* v. *Robinson*, 74 Mass. App. Ct. 752, 757 (2009). Rather, the relevant "question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original). *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979), quoting from *Jackson* v. *Virginia*, *supra*.

When evaluating sufficiency, the evidence must be reviewed with specific reference to the substantive elements of the offense. See *Commonwealth* v. *Latimore*, *supra* at 677-678. Under common law, "an assault is defined as either an attempt to use physical force on another, or as a threat of use of physical force." *Commonwealth* v. *Gorassi*, 432 Mass. at 247-248.[5] "Under the attempted battery theory, the Commonwealth must prove that the defendant intended to commit a battery, took some overt step toward accomplishing that intended battery, and came reasonably close to doing so." *Commonwealth* v. *Melton*, 436 Mass. 291, 295 (2002). But an attempted battery does not require proof "that the victim [was] aware of the attempt or [was] put in fear by it." *Commonwealth* v. *Gorassi*, *supra* at 248. "In the case of a threatened battery type of assault, the Commonwealth must prove that the defendant engaged in 'objectively menacing' conduct with the intent to put the victim in fear of immediate bodily harm." *Ibid.*, citing *Commonwealth* v. *Musgrave*, 38 Mass. App. Ct. 519, 524 n.7 (1995), *S.C.*, 421 Mass. 610 (1996).

The Commonwealth may properly use the same conduct to prove an assault under both forms. *Commonwealth* v. *Lednum*, 75 Mass. App. Ct. 722, 725 (2009). Here, as in *Lednum*, the defendant's conduct fits comfortably within either definition of assault. From the evidence that the defendant put his truck into drive and "lurched" it at Leonard (overt act attempting bodily harm), stopping only when Leonard aimed his service weapon at him (reasonably close to committing a battery), a rational

---

[5] The crime of assault by means of a dangerous weapon adds one additional element, i.e., that the assault was perpetrated with a dangerous weapon. See G. L. c. 265, § 15B(*b*). The defendant does not dispute that the truck was a dangerous weapon.

fact finder could reasonably conclude that an attempted battery took place. See *Commonwealth* v. *Purrier*, 54 Mass. App. Ct. 397, 399-403 (2002). From the evidence that the defendant "lurched" his truck at Leonard (menacing conduct), who was standing a few feet away and in fear for his life (fear of imminent harm), a rational fact finder could reasonably conclude that a threatened battery had occurred. See *Commonwealth* v. *Melton*, *supra* at 295 n.4.

Finally, the defendant claims that there was no evidence that he acted intentionally because the evidence showed that he was merely trying to escape, and that he may have accidentally shifted the truck into drive instead of reverse. However, to indulge this argument, we would have to view the evidence in the light *least* favorable to the Commonwealth, which, of course, we cannot do. See *Commonwealth* v. *James*, 30 Mass. App. Ct. 490, 491 n.2 (1991). Rather, the defendant's overt act of putting the truck into drive and driving it at Leonard was more than sufficient to permit the inference that the defendant's conduct was intentional. See *Commonwealth* v. *Casale*, 381 Mass. 167, 173 (1980) ("inferences drawn by the jury need only be reasonable and possible and need not be necessary or inescapable").[6]

c. *Nonsuggestive in-court identification.* The defendant claims that the denial of his pretrial request for a nonsuggestive in-court identification procedure was an error. We disagree. Whether "the extraordinary measure of an in-court identification procedure was called for" is a matter that rests within the sound discretion of the judge. *Commonwealth* v. *Dahl*, 430 Mass. 813, 825 (2000). See *Commonwealth* v. *Jones*, 362 Mass. 497, 501 (1972).

Here, where there was no pretrial motion to suppress Leonard's identification, no request for a voir dire on the subject, and no objection to Leonard's identification at trial, we are simply unable to conclude that the judge abused his discretion. See *Commonwealth* v. *Pearsall*, 370 Mass. 413, 415-416 (1976).

---

[6]Because a motion for a required finding of not guilty would have been properly denied under either type of assault, the failure of the defendant's trial counsel to make such a motion did not result in the defendant receiving ineffective assistance of counsel. See *Commonwealth* v. *Conceicao*, 388 Mass. 255, 264 (1983) (failure to pursue futile motion does not constitute ineffective assistance of counsel).

In fact, prior to this appeal, there has been no suggestion that Leonard was unusually impressionable or that his identification was otherwise unreliable. See *Commonwealth* v. *Jones, supra.* As in *Pearsall,* the defendant's late blooming claim on appeal that the identification was suggestive is improper, and the record he brings to us is entirely inadequate to supply a factual basis for the claim. *Commonwealth* v. *Pearsall, supra.* See *Commonwealth* v. *Dora,* 57 Mass. App. Ct. 141, 148 (2003) (where the defendant did not move to suppress an identification before trial and did not seek a voir dire hearing or object at trial, the issue was waived).

A review of the record we do have does not even hint at error, let alone a substantial risk of a miscarriage of justice. Leonard, an experienced police officer, identified the defendant at the scene of his arrest within five to ten minutes after the defendant left the Home Depot. "[S]howups of suspects to eyewitnesses of crimes have been regularly held permissible when conducted by the police promptly after the criminal event." *Commonwealth* v. *Bowden,* 379 Mass. 472, 479 (1980), quoting from *Commonwealth* v. *Barnett,* 371 Mass. 87, 92 (1976), cert. denied, 429 U.S. 1049 (1977). The police had good reason to do the showup as it served the useful function of ensuring quickly that the police had apprehended the right person. See *Commonwealth* v. *Austin,* 421 Mass. 357, 362 (1995); *Commonwealth* v. *Martinez,* 67 Mass. App. Ct. 788, 792 (2006).

Finally, Leonard had more than a sufficient opportunity to observe the defendant stealing the merchandise from the Home Depot. Leonard watched the defendant in the well-lit garden section of the store for a period of almost five minutes, and later saw him face-to-face, illuminated by the "very bright" headlights of Leonard's truck, for a period of fifteen seconds. Leonard testified that he would "never forget" the defendant's face because he had to draw his service weapon on the defendant at such a close range. Leonard had "an imprint of the [the defendant's] face burned in [his] memory." Leonard had "no doubt" about his identification of the defendant. Also, Officer Hannon identified the truck the defendant had been driving as the one in the high

speed chase. There was no abuse of discretion in the denial of the request for an in-court identification.[7]

*Judgments affirmed.*

---

[7]In conclusory fashion, without reasoned argument or citation to authority, contrary to Mass.R.A.P. 16(a)(4), and relegated to a footnote, see *Commonwealth* v. *Lydon*, 413 Mass. 309, 317-318 (1992) ("[a]rguments relegated to a footnote do not rise to the level of appellate argument"), the defendant claims that trial counsel was ineffective for not filing a motion to request in-court identification procedures earlier. Even if this were a proper appellate argument, it would be without merit, as the defendant has not demonstrated that Leonard's identification was unnecessarily suggestive.