NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-1464                                          Appeals Court

COMMONWEALTH  vs.  JULIE LEONARD
(and a companion case[1]).

No. 14-P-1464.

Essex.      February 11, 2016. - September 9, 2016.

Present:  Kafker, C.J., Rubin, & Agnes, JJ.


Assault and Battery by Means of a Dangerous Weapon.  Dangerous
     Weapon.  Reckless Endangerment of a Child.  Practice,
     Criminal, Complaint, Dismissal.  Probable Cause.


     Complaints received and sworn to in the Gloucester Division
of the District Court Department on January 14 and 17, 2013.

     Motions to dismiss were heard by Joseph W. Jennings, III,
J.


     Marcia H. Slingerland, Assistant District Attorney, for the
Commonwealth.
     Matthew Wright Hemond for the defendants.


     AGNES, J.  This is the Commonwealth's appeal from the

dismissal of one count of assault and battery by means of a

dangerous weapon against defendant Julie Leonard, and one count

each of child endangerment against defendants Julie Leonard and

_____

     [1] The companion case is against Mark Leonard.

Mark Leonard.[2]  We conclude that the complaints established probable cause for the elements of the crimes charged. Accordingly, we vacate the judgments of dismissal and order that the complaints be reinstated.

Background.  a.  Police report.  We recite the facts contained in the police report written by Detective Jeremiah Nicastro of the Gloucester police department in support of his application for the criminal complaints.  On the evening of November 30, 2012, a group of youths (ages sixteen and seventeen) were invited to a party at the home of the defendants, Mark and Julie Leonard, the parents of one of the teens.  The teens were supplied with alcohol by the twenty-three year old boyfriend of the defendants' daughter, and were drinking vodka, beer, and tequila when Mark arrived home at 9:30 P.M.  Mark joined his daughter and her friends in consuming beer.  Julie arrived home around 11:00 P.M. and also joined them, consuming red wine.  Mark smoked marijuana with his daughter and her boyfriend, and the drinking continued until around 2:00 A.M.

One of the daughter's friends, Susan,[3] aged sixteen, became "extremely ill and began to throw up" during the early morning

---

[2] Because the defendants share a surname, we refer to each by their first name.

[3] A pseudonym.

hours, and stayed at the defendants' home overnight.  Susan asked Julie, who is a nurse, to take her to the hospital, but Julie explained that "if she [went] to the hospital they [would] give her an IV and put a tube down her throat."  Susan was also concerned that she would get into trouble if her mother found out that she had been drinking at the defendants' home.  Susan was not taken to the hospital.

The next morning, around 11:00 A.M., Susan was sober but "could not stop throwing up."  Julie told Susan that she had some medicine Julie had taken from her employer, a nursing home, that would help Susan stop throwing up.  Julie used a syringe to inject Susan with an unknown substance.[4]  After the injection, Susan "felt better."

When the mother of one of the teens called Mark the next day, Mark told her that his wife, Julie, "made a bad decision because she is a nurse," and that "[Susan] asked Julie for the injection of medicine."  Mark went on to say that Julie "can[']t lose her job as a nurse, her job is on the line," and that, if police became involved, Julie would tell them that "it was a

---

[4] According to the police report, "[Susan] state[d] that the medicine began with the letter C."  It goes on to note in parentheses, "(possibly Compazine?)"  No further information on the contents of the syringe was provided.  As part of the investigation, Detective Nicastro interviewed the administrator of the nursing home where Julie was employed, who confirmed that some patients do receive a liquid form of Compazine, and that Julie would have access to those medications.

tooth whitening tube with no needle and they tricked her but did not really give her an injection of medicine."  Mark said that "[Susan] would be too drunk to know the difference."  When Detective Nicastro called Julie on January 13, 2013, and asked her to come to the police station, she told him, "[W]e aren[']t coming down without an attorney and they are all lying."  Mark later consented to a search of the defendants' home, and during the search, he stated, "I sometimes come home and my daughter and her friends are here drinking, I am damn [sic] if I do, damn [sic] if I don[']t, if I send them home and they get into an accident I am screwed."

   b.  Disposition of the criminal charges.  Julie was charged with assault and battery by means of a dangerous weapon.  Each defendant also was charged with delivery of an alcoholic beverage to a minor, reckless endangerment of a child, and contributing to the delinquency of a child.  Julie moved to dismiss the assault and battery charge, and both defendants moved to dismiss the reckless endangerment charges.  By a notation in the margin of the motion, the judge allowed defendant Julie's motion to dismiss the charge of assault and battery by means of a dangerous weapon against her, reasoning as follows:  "The victim was not so intoxicated over a protracted time period so as to invalid[ate] consent to the shot.

(Reckless assault and battery alleging serious interference with the victim's health or comfort may be sustainable)."

With respect to the charge of reckless child endangerment (one count against each defendant), the judge allowed the motions to dismiss on the basis that "[t]he victim did not suffer a 'serious bodily injury' as defined in G. L. c. 265, § 13L[,] as there was no permanent disfigurement and no protracted loss or impairment of bodily function, limb or organ. At best the Commonwealth's inference of a substantial risk of death is unsupported by any factual allegation."

Discussion. a. Probable cause for issuance of a criminal complaint. "After the issuance of a complaint, a motion to dismiss will lie for a failure to present sufficient evidence to the clerk-magistrate (or judge)." Commonwealth v. DiBennadetto, 436 Mass. 310, 313 (2002). "The probable cause standard on a motion to dismiss a complaint is identical to that applied in the analysis of a motion to dismiss an indictment for lack of probable cause." Commonwealth v. Ilya I., 470 Mass. 625, 627 (2015). Judicial review is on the basis of an objective test. See id. at 628. The complaint need only contain sufficient facts to establish the identity of the accused, and provide probable cause as to each element of the crime(s) charged. See Commonwealth v. McCarthy, 385 Mass. 160, 163 (1982); Commonwealth v. Humberto H., 466 Mass. 562, 565 (2013). A

motion to dismiss for lack of probable cause "is decided from the four corners of the complaint application, without evidentiary hearing."  Ibid., quoting from Commonwealth v. Huggins, 84 Mass. App. Ct. 107, 111 (2013).  "[P]robable cause exists where . . . the facts and circumstances within the knowledge of police are enough to warrant a prudent person in believing that the individual arrested has committed or was committing an offense."  Commonwealth v. Stewart, 469 Mass. 257, 262 (2014), quoting from Commonwealth v. Santaliz, 413 Mass. 238, 241 (1992).  A demonstration of probable cause "requires more than mere suspicion but something less than evidence sufficient to warrant a conviction."  Commonwealth v. Roman, 414 Mass. 642, 643 (1993), quoting from Commonwealth v. Hason, 387 Mass. 169, 174 (1982).  We view the allegations set forth in support of probable cause in the light most favorable to the Commonwealth.  See Commonwealth v. Levesque, 436 Mass. 443, 444 (2002).

b.  Assault and battery by means of a dangerous weapon. The crime of assault and battery by means of a dangerous weapon, in violation of G. L. c. 265, § 15A, requires proof of three elements:  (1) the presence of all the elements of assault, and (2) a touching, however slight, (3) by means of a dangerous weapon.  See Commonwealth v. Appleby, 380 Mass. 296, 308 (1980). The facts alleged in support of the complaint are that a

touching occurred.  We examine in turn the evidence in support of the two remaining elements to consider whether the probable cause standard was satisfied.  We conclude that it was sufficient for the elements of assault and to establish probable cause on the dangerous weapon element.

As a threshold matter, we recognize that the parties dispute the importance of the alleged victim's consent to the injection.  In our view, however, the issue of consent is relevant only as to the lesser-included offense of simple assault and battery.  "Consent is . . . immaterial to a charge of assault and battery by means of a dangerous weapon, which necessarily entails a risk of bodily harm."  Commonwealth v. Burke, 390 Mass. 480, 482-483 (1983).  The question whether the syringe was a dangerous weapon must be answered prior to any consideration by the fact finder of the victim's capacity to consent and whether she did in fact consent.  We therefore address the dangerous weapon element first.

1.  Dangerous weapon.  Under Massachusetts law, there is a distinction between an instrumentality that is dangerous per se and an instrumentality used in a manner that makes it dangerous in fact.  See Commonwealth v. Tarrant, 367 Mass. 411, 414-417 (1975).  A weapon is dangerous as a matter of law when it is "in its ordinary use designed to produce death or serious bodily injury."  Id. at 416.  A hypodermic syringe, under this

definition, is not dangerous per se. See ibid. However, a
hypodermic syringe may be dangerous in fact when "used in a
dangerous fashion." Commonwealth v. Sexton, 425 Mass. 146, 149
(1997), quoting from Appleby, supra at 304. See Commonwealth v.
Tevlin, 433 Mass. 305, 310-311 (2001) (sneakers qualified as
dangerous weapon); Commonwealth v. McIntosh, 56 Mass. App. Ct.
827, 831 (2002) (windowpane qualified as dangerous weapon).

This is a highly fact-bound question that requires "not
only consideration of any evidence as to the nature and specific
features of the object but also attention to the circumstances
surrounding the assault and the use of the object, and the
manner in which it was handled or controlled." Commonwealth v.
Marrero, 19 Mass. App. Ct. 921, 922 (1984). Viewing the
evidence in the light most favorable to the Commonwealth, as we
must, the defendant administered an unknown drug used for adult
nursing home patients to a teenager for whom the drug had not
been prescribed and did so without knowing whether it was
contraindicated for the victim.[5] The use of the syringe in such
circumstances was dangerous. Therefore, it cannot be said as a
matter of law that the syringe and its contents were not
"capable of producing serious bodily harm." Commonwealth v.

---

[5] For purposes of determining the existence of probable
cause, the defendant's status as a nurse, standing alone, is not
material.

Strickland, 87 Mass. App. Ct. 46, 60 (2015), quoting from

Marrero, supra.

We turn now to the assault element of the lesser-included

charge of assault and battery.[6]

2. Assault. Common-law assault may be accomplished by

either (1) an attempted battery or (2) putting another in fear

of an immediately threatened battery. See Commonwealth v.

Gorassi, 432 Mass. 244, 247 (2000). Under a theory of attempted

battery, it is not necessary that the victim be aware of, or in

fear of, the attempt. See id. at 248. Under a theory of

immediately threatened battery, however, the Commonwealth must

show that the defendant "engaged in 'objectively menacing'

conduct with the intent to put the victim in fear of immediate

bodily harm." Ibid. See Commonwealth v. Delgado, 367 Mass.

432, 437 (1975). In this case, there is no evidence to support

a theory of threatened battery. The police report indicates

that Julie proposed the use of the syringe to alleviate the

victim's nausea, and once the victim agreed, Julie administered

the drug it contained. This is not evidence that Julie intended

to place the victim in fear, nor, as we noted in the foregoing

section, can Julie's conduct be characterized as "objectively

menacing." Therefore, only a theory of attempted battery is

---

[6] We do not address the element of a touching, because there is no dispute that a touching occurred in this case.

plausible to establish the assault element of assault and battery by means of a dangerous weapon.

3. Attempted battery. Attempted battery requires that the defendant "intended to commit a battery, took some overt step toward accomplishing that intended battery, and came reasonably close to doing so." Commonwealth v. Melton, 436 Mass. 291, 295 & n.4 (2002). A battery, in turn, is a harmful or offensive touching. Commonwealth v. Burke, 390 Mass. 480, 482-483 (1983) (differentiating between harmful and offensive battery). Under the attempted battery theory, the Commonwealth need not show that the victim was in fear, or even aware, of the attempted battery. See Commonwealth v. Porro, 458 Mass. 526, 530 (2010). "The critical element is the potential harm to which the victim was exposed." Commonwealth v. Lednum, 75 Mass. App. Ct. 722, 725 (2009). If the touching is in fact physically harmful, "consent is immaterial." Burke, supra at 481. A nonharmful touching may still be a battery where the victim did not consent. See Commonwealth v. Hartnett, 72 Mass. App. Ct. 467, 476 (2008).

Thus, to survive the probable cause stage, the police report must have contained facts sufficient to support the attempted battery theory, i.e., that Julie intended to effectuate a harmful or offensive touching in approaching Susan to inject her with the syringe. Here, the victim was a minor

who had recently consumed a large amount of alcohol to the point of vomiting, and there is a serious question whether she had the capacity to consent to the touching.[7] The facts alleged in support of the complaint are that Julie was aware of the victim's state, plainly intended to stick a needle into her arm, and did in fact do so. We conclude that this evidence established probable cause to allow the issue whether the victim could consent (and, by extension, whether the elements of assault were established) to be considered by the fact finder at trial.

In the alternative, a theory of attempted battery by harmful touching is also viable. Because the syringe and its contents were potentially harmful, attempting to administer the injection could be an attempted battery, to which consent is immaterial. As previously explained, Julie, a nurse, administered a drug to the victim without ascertaining whether she had any allergies or was taking any counter-indicated drugs. Indeed, she altogether lacked authority to prescribe medications. The fact that the victim had recently consumed a large quantity of alcohol may have affected the drug's efficacy

---

[7] Because Susan was a minor, the question whether she had the legal capacity to consent to the injection is fiercely debated by the parties. In addition, defendant Mark's comments to one of the teens' mothers imply that Susan was intoxicated to the point of being unable to give consent. However, it is not for us to decide whether the victim could or did give her consent.

or harmfulness.  Whether the drug contained in the syringe posed a threat of physical harm to the victim is a question for the fact finder.

c.  <u>Reckless endangerment of a child</u>.  The crime of reckless endangerment of a child is committed when a person "wantonly or recklessly engages in conduct that creates a substantial risk of serious bodily injury . . . to a child or wantonly or recklessly fails to take reasonable steps to alleviate such risk where there is a duty to act."  G. L. c. 265, § 13L, inserted by St. 2002, c. 322, § 2.  The statute further requires an awareness and conscious disregard of a "substantial and unjustifiable risk" to the child, which risk "must be of such nature and degree that disregard of the risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."  <u>Ibid</u>. Serious bodily injury is that which "results in a permanent disfigurement, protracted loss or impairment of a bodily function, limb or organ, or substantial risk of death."  <u>Ibid</u>. We consider whether the facts alleged in the police report satisfied the probable cause standard as to each element of the crime charged, and conclude that they did.

1.  <u>Wanton or reckless conduct</u>.  A conviction under § 13L requires proof that the defendant, wantonly or recklessly, either (a) engaged in conduct to create the substantial risk, or

(b) failed to take reasonable steps to alleviate that risk where she or he had a duty to act. Commonwealth v. Coggeshall, 473 Mass. 665, 668 (2016). The Commonwealth must prove the defendant's subjective awareness of the risk in order to sustain a conviction. Id. at 670. More than mere negligence is required to show that the defendant wantonly or recklessly disregarded the risk. Under § 13L, "wanton or reckless" refers to "such conduct . . .where an accused 'is aware and consciously disregards' the risk." Ibid., quoting from G. L. c. 265, § 13L. See Commonwealth v. Hendricks, 452 Mass. 97, 103 (2008).

Although it is not clear from the police report, the alcohol consumed by the victim may have been provided by one or both defendants. The police report does make clear that both were consuming alcohol along with the teenagers in the defendants' own home, that Julie was aware that Susan was vomiting after having consumed a large volume of alcoholic beverages, and that Julie did not heed her requests to be taken to a hospital. It also contains comments allegedly made by Mark to one of the teens' mothers after the incident, which suggest that he, too, was aware of Susan's condition. These facts could support a theory that the defendants created the substantial risk of serious bodily injury by furnishing the alcohol that Susan drank to excess. Indeed, the crime of furnishing alcohol to a minor is defined in G. L. c. 138, § 34, as amended through

St. 2000, c. 175. This section defines "furnish" to include "allow[ing] a person under 21 years of age . . . to possess alcoholic beverages on premises or property owned or controlled by the person charged." We infer that a violation of § 34 is sufficient to establish that a defendant had the requisite mens rea for the crime of reckless child endangerment. The police report's allegations therefore support a finding of probable cause as to the wanton or reckless intent element of § 13L.

2. Substantial risk of serious bodily injury. Serious bodily injury is that which "results in a permanent disfigurement, protracted loss or impairment of a bodily function, limb or organ, or substantial risk of death." G. L. c. 265, § 13L. The judge dismissed the complaint on the basis that Susan did not suffer any serious bodily injury, as defined in the statute. However, as the Commonwealth correctly argues, § 13L does not require actual injury, but only a substantial risk of such injury. The potential serious bodily injury alleged by the Commonwealth is aspiration and possible protracted impairment of her digestive organs, demonstrated by the alleged victim's uncontrolled vomiting. We agree that this potential constituted sufficient probable cause on the serious bodily injury element of § 13L.[8]

---

[8] Examples of conditions that, when protracted, can constitute substantial bodily injury are asphyxia, malnutrition,

The Supreme Judicial Court recently revisited the "substantial risk" standard of § 13L in Coggeshall, supra. "The term 'substantial risk' can be understood to mean a 'real or strong possibility,'" which must be considered in conjunction with the serious bodily injury requirement. Ibid. The police report alleges that Susan, a minor, "could not stop vomiting" after having consumed vodka, beer, and tequila. It would be reasonable and possible to conclude that these circumstances presented a real or strong possibility that Susan could suffer the injuries described above. On these facts, we cannot conclude as a matter of law that no substantial risk existed.

4. Conclusion. The police report that forms the basis for the criminal charges in this case contains factual allegations sufficient to satisfy the probable cause standard as to both charges of reckless child endangerment and as to assault and battery by means of a dangerous weapon. Accordingly, we vacate the judgments of dismissal, reinstate the complaints, and remand to the District Court for further proceedings consistent with this opinion.

So ordered.

---

and dehydration. See Commonwealth v. Chapman, 433 Mass. 481, 484-486 (2001) (interpreting "substantial bodily injury" as used in G. L. c. 265, § 13J[a]). "Substantial bodily injury" in § 13J and "serious bodily injury" in § 13L have "essentially identical meanings." Commonwealth v. Roderiques, 462 Mass. 415, 423 n.2 (2012).