NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

18-P-100                                              Appeals Court

COMMONWEALTH  vs.  ELIUZA A. SANTOS.

No. 18-P-100.

Essex.      October 11, 2018. - December 12, 2018.

Present:  Henry, Shin, & Singh, JJ.

Reckless Endangerment of a Child.  Practice, Criminal,
    Dismissal.  Probable Cause.

Complaint received and sworn to in the Lynn Division of the
District Court Department on May 25, 2016.

A motion to dismiss was heard by Cathleen E. Campbell, J.

Catherine Patrick Sullivan, Assistant District Attorney,
for the Commonwealth.
Edward Crane for the defendant.

SHIN, J.  We decide in this case whether the defendant's
failure to supervise her three year old daughter, both inside
and outside the home, gives rise to probable cause to believe
that she committed the crime of reckless endangerment of a
child.  See G. L. c. 265, § 13L.  Finding a lack of probable
cause, a District Court judge allowed the defendant's motion to

dismiss the complaint, and the Commonwealth appeals.  We agree with the judge that the defendant's act of leaving the child alone in front of the television for ten to fifteen minutes does not establish probable cause that she acted recklessly.  But we conclude that, once the defendant realized that the child had wandered from the home, she had a duty to search for her, and evidence that she stopped searching and failed to enlist others to search was sufficient to meet the probable cause requirement. We therefore vacate the order of dismissal.

Background.  The application for a complaint alleged as follows.  Around 10:50 A.M. on May 13, 2016, Saugus police Officer Jeffrey Wood was dispatched to an elementary school following a report of a female child found wandering alone in the playground.  While Wood was en route, he learned the child's name and that she was three years old.  He then recalled that on April 25, 2016, school employees had reported finding the same child alone in the playground.  Another officer had responded to that call, located the child's mother (the defendant), and reunited her with the child without incident.

Wood arrived at the school around 10:55 A.M. and was directed to the nurse's office where he saw the child.  She was wearing a T-shirt and diaper and had bare feet, but was in good health with no cuts or abrasions.  A school employee told Wood that she found the child in the playground around 10:40 A.M.

Meanwhile, based on information from the April 25, 2016, incident, Officer Matthew Donahue was dispatched to an apartment located approximately .2 miles, or 1,056 feet, from the school. He arrived there around 10:56 A.M. Though he "rang the doorbell and pounded on the door repeatedly," he received no response. After dispatch placed a telephone call to the apartment, the defendant came to the door around 11 A.M. It appeared to Donahue that the defendant had "just awoken from sleeping" and she "was not alarmed, panicked, or crying." She also did not ask Donahue for help finding the child.

Donahue asked the defendant if she knew where her daughter was, and she replied, "At the playground?" The defendant explained that she had set the child down in the living room to watch cartoons while she went to the upstairs bathroom for approximately ten to fifteen minutes to attend to "women problems." When she came back down, the child was gone; the door to the apartment was open; and the key to the deadbolt had been inserted from the inside. The defendant said that she looked for the child for approximately ten minutes and then "just assumed she was playing with a neighbor[']s child." When Donahue asked why she did not call 911, the defendant replied, "That was my mistake."

Donahue drove the defendant to the school and reunited her with the child. The child's father also arrived at the school,

and social workers from the Department of Children and Families interviewed both parents.  The defendant confirmed the prior incident on April 25, 2016, and stated that the child likes to wander.  The child's father stated that after that incident he installed a deadbolt on the apartment door and instructed family members to hang the key on a high hook in the kitchen.  The defendant believed, however, that her teenage son may have instead left the key on the counter where the child could reach it.

Discussion.  A motion to dismiss for lack of probable cause is evaluated from the four corners of the application for a complaint.  See Commonwealth v. Humberto H., 466 Mass. 562, 565 (2013).  The application must set forth sufficient facts to establish probable cause as to each element of the charged crime.  See id. at 565-566.  Probable cause exists where there is "reasonably trustworthy information sufficient to warrant a reasonable or prudent person in believing that the defendant has committed the offense."  Id. at 565, quoting Commonwealth v. Roman, 414 Mass. 642, 643 (1993).  This requires "more than mere suspicion," but "considerably less than proof beyond a reasonable doubt."  Humberto H., supra, quoting Roman, supra.  Our review of the order of dismissal is de novo, see Humberto H., supra at 566, and we take the complaint in the light most

favorable to the Commonwealth.  See Commonwealth v. Leonard, 90 Mass. App. Ct. 187, 190 (2016).

The crime of reckless endangerment of a child requires proof that the defendant "wantonly or recklessly engage[d] in conduct that create[d] a substantial risk of serious bodily injury or sexual abuse to a child [under the age of eighteen] or wantonly or recklessly fail[ed] to take reasonable steps to alleviate such risk where there [was] a duty to act."  G. L. c. 265, § 13L.  "[W]anton or reckless behavior occurs," for purposes of § 13L, "when a person is aware of and consciously disregards a substantial and unjustifiable risk that his acts, or omissions where there is a duty to act, would result in serious bodily injury or sexual abuse to a child."  Id.  See Commonwealth v. Coggeshall, 473 Mass. 665, 670 (2016) (section 13L evinces "a clearly expressed legislative intent to depart from the common-law meaning of the words 'wanton or reckless'").  To be substantial and unjustifiable, "[t]he risk must be of such nature and degree that disregard of the risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation."  G. L. c. 265, § 13L.  "In other words, the risk must be a good deal more than a possibility, and its disregard substantially more than negligence."  Commonwealth v. Hendricks, 452 Mass. 97, 103 (2008).  See Coggeshall, 473 Mass. at 668; Leonard, 90 Mass.

App. Ct. at 194. "The risk also must be considered in conjunction with a particular degree of harm, namely 'serious bodily injury,'" Coggeshall, 473 Mass. at 668, defined as an injury that "results in a permanent disfigurement, protracted loss or impairment of a bodily function, limb or organ, or substantial risk of death." G. L. c. 265, § 13L.[1]

While no reported Massachusetts decision has addressed whether, and in what circumstances, a caregiver's inadequate supervision of a child can support a conviction under § 13L, courts in other jurisdictions have analyzed similar statutes. As those cases recognize, the inquiry is necessarily fact-specific, requiring consideration of the totality of the circumstances. Relevant circumstances may include "the gravity and character of the possible risks of harm; the degree of accessibility of the [defendant]; the length of time of the abandonment; the age and maturity of the children; the protective measures, if any, taken by the [defendant]; and any other circumstance that would inform the factfinder on the question whether the defendant's conduct was [wanton or reckless]." Barnes v. Commonwealth, 47 Va. App. 105, 113 (Va. Ct. App. 2005). Accord In re N.K., 169 N.H. 546, 552 (2016); State v. Maurice M., 303 Conn. 18, 28-29 (2011).

---

[1] The Commonwealth does not contend that the child was at a substantial risk of sexual abuse.

Considering the totality of the circumstances here, we conclude that the complaint established probable cause to believe that the defendant violated § 13L.  Initially, though, we agree with the motion judge that the defendant's act of leaving the child in front of the television while the defendant used the bathroom does not establish probable cause, even though the child had previously wandered from the home.  Without evidence of other aggravating circumstances, this behavior did not rise to the level of wanton or reckless conduct creating a substantial risk of serious bodily injury to the child.  See State v. Greenlee, 2012-Ohio-1432, at ¶ 14 (Ct. App. 2012) (fact that four year old child disappeared from home while defendant was in bathroom "is not necessarily indicative of child endangerment"); Maurice M., 303 Conn. at 29 ("Evidence of the defendant's wilful failure to supervise his child inside the home . . . does not, on its own, establish the defendant's commission of the crime of risk of injury to a child").  According to the complaint, the defendant was inside the home and remained accessible to the child; she left to use the bathroom for only a few minutes; and there was no evidence of any condition in the home that presented a particular risk of harm.  Moreover, though the Commonwealth argues that the defendant should have known, based on the prior incident, that the child might go outside, the parents took protective measures

after that incident by installing a deadbolt on the door. Contrary to the Commonwealth's contention, the police report does not "reflect[] that the defendant knew that more than a deadbolt was required to keep [the child] safe." There is no indication that the child had previously unlocked the deadbolt or that the defendant knew that the key was in a place where the child could reach it. Thus, were we to consider only these facts, we would agree with the judge that the complaint failed to establish probable cause that the defendant acted wantonly or recklessly. Cf. Maurice M., 303 Conn. at 35-36 (State failed to prove that parent should have foreseen that two year old child, who was supervised by eight year old child, would wander outside, where "the child had never left the house before under these circumstances" and there was no evidence that he "often misbehaved, was less prone to follow instructions, or otherwise would have been more at risk for escaping from the home").

We part ways with the judge, however, when considering the entire course of the defendant's conduct -- in particular, her conduct once she discovered that the child was missing. After searching for only ten minutes, the defendant "just assumed" that the child was playing with a neighbor's child and returned home. She did not call the police and, it can be inferred from the police report, had no immediate plans to continue searching for the child herself. These facts are sufficient to establish

probable cause that the defendant "wantonly or recklessly fail[ed] to take reasonable steps to alleviate" a substantial risk of serious bodily injury to the child.  G. L. c. 265, § 13L.  A reasonable factfinder could rely on common sense to conclude that a three year old child left unattended outdoors faces serious risks of harm -- she could have "wandered out . . . into vehicular traffic, or gotten lost outside, or injured [herself] in any number of ways that children of such a young age can."  Barnes, 47 Va. App. at 112.  Given these dangers "[i]t cannot seriously be disputed that . . . a parent's duty to protect [her] young child requires keeping the child from wandering around outside unsupervised."  Greenlee, 2012-Ohio-1432, ¶ 14.  Cf. Barnes, 47 Va. App. at 111-112 (evidence sufficient to prove that defendant acted recklessly by "leaving her [two] and [four] year old children alone in an unlocked apartment while making herself inaccessible for a period of time long enough to travel to a grocery store, collect and check out [ten] bags of groceries, and then drive back"); State v. Riggs, 2 S.W.3d 867, 873 (Mo. Ct. App. 1999) (evidence sufficient to support conviction of child endangerment where defendant left two year old child outdoors for forty-five minutes, without proper supervision, and with unfenced pond nearby).

The defendant, for her part, does not quarrel with the proposition that leaving a young child alone outside could be

deemed wanton or reckless. Instead, she argues that it is "impossible to form a reasonable belief that [the child] was at substantial risk of serious bodily injury" because the complaint failed to establish precisely how long she was outside before the school employee found her. The defendant posits that, based on the average time it would take a kindergartner to walk the 1,056 feet to the playground, the child could have been alone outside for as little as five minutes -- an insufficient amount of time, the defendant says, to give rise to a substantial risk that the child would suffer a serious injury.

The relevant issue, however, is not how much time passed before the child was found; it is whether there is a substantial risk that the defendant's "acts, or omissions where there is a duty to act, would result in serious bodily injury . . . to [the] child." G. L. c. 265, § 13L. The act or omission here is not leaving the child unsupervised outside for five minutes. Rather, the act or omission that gives rise to probable cause is the defendant's decision to leave a three year old child unsupervised outside for an indeterminate amount of time, without calling the police and with no apparent plan to continue searching on her own any time soon. See Greenlee, 2012-Ohio-1432, ¶ 14 ("if the child manages to escape the parent's supervision, whether or not this is the parent's fault, the duty of protection demands that the parent make an effort to find the

child as quickly as possible").  That the child was timely and fortuitously found by a responsible adult does not bear on the defendant's culpability, at least not without evidence that the defendant knew that the child had been found and was in a safe place.  See Barnes, 47 Va. App. at 111-112 (evidence sufficient to prove that defendant acted with "gross indifference to her children's safety," even though "children exercised the good sense to walk to a neighbor's apartment"); Riggs, 2 S.W.3d at 873 ("Whether the outcome of [the] incident had been [the child's] death, [his] rescue . . . or his return home . . . , a charge of child endangerment could have been filed and the question would remain the same").

Hannon v. Commonwealth, 68 Va. App. 87 (Va. Ct. App. 2017), on which the defendant relies, is distinguishable.  The court there held that the Commonwealth failed to prove a substantial risk of harm where the defendant left her two children in an unlocked vehicle while she shopped, but intended to return, and did in fact return, in less than fifteen minutes.  Id. at 95. Assuming, without deciding, that we would reach the same result on those facts, this case is different because the complaint, viewed in the light most favorable to the Commonwealth, establishes that the defendant had no imminent plans to continue looking for the child.  And contrary to the defendant's claim raised at oral argument, the harm to the child need not have

actually materialized. "[T]he crime of reckless endangerment does not require proof of injury, only proof of a substantial risk of injury." Commonwealth v. Figueroa, 83 Mass. App. Ct. 251, 261 (2013). See Leonard, 90 Mass. App. Ct. at 194.

For these reasons we conclude that the complaint satisfied the "probable cause requirement, which is not particularly burdensome." Coggeshall, 473 Mass. at 671. The order dismissing the complaint is therefore vacated, and the case is remanded for further proceedings consistent with this opinion.

So ordered.