NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12637

COMMONWEALTH  vs.  SUZANNE HARDY.


Hampden.      February 5, 2019. - June 12, 2019.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher, &
Kafker, JJ.


Homicide.  Motor Vehicle, Homicide, Operating to endanger.
    Reckless Endangerment of a Child.  Wanton or Reckless
    Conduct.



    Indictments found and returned in the Superior Court
Department on June 1, 2015.

    The cases were tried before Richard J. Carey, J.

    The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


    Marissa Elkins for the defendant.
    Shane T. O'Sullivan, Assistant District Attorney, for the
Commonwealth.


    CYPHER, J.  In June 2014, the defendant, Suzanne Hardy, was

involved in a multivehicle accident in Brimfield in which her

two nephews -- four year old Dylan Riel and sixteen month old

Jayce Garcia -- were fatally injured.[1]  The defendant and her four year old son were seriously injured, but survived.  At the time of the accident, Dylan was seated in the rear middle seat of the defendant's four-door sedan with the seat belt fastened, but without an age and size appropriate child safety "booster" seat, and Jayce was seated in the rear passenger's side position, in a front-facing safety seat with the straps set too high, rather than an age and size appropriate rear-facing safety seat.

The defendant was indicted on two counts of manslaughter, G. L. c. 265, § 13; two counts of negligent motor vehicle homicide, G. L. c. 90, § 24G (b); one count of assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A (b); and three counts of reckless endangerment of a child, G. L. c. 265, § 13L.  The defendant was convicted of manslaughter of Dylan, reckless endangerment of Dylan, and negligent motor vehicle homicide of Dylan and Jayce.

On appeal, the defendant raises two arguments.  First, she contends that there was insufficient evidence to support the convictions of involuntary manslaughter and reckless endangerment of a child relating to Dylan.  Second, she argues that, during closing argument, the Commonwealth improperly

---

[1] The children will be referred to by their first names to avoid confusion.

argued inferences not supported by the evidence and appealed to the passions and sympathies of the jury.  We conclude that there was insufficient evidence to show that the defendant's actions amounted to wanton or reckless conduct, and as such, we vacate the convictions of involuntary manslaughter and reckless endangerment of Dylan.  The defendant's two convictions of negligent homicide are affirmed.[2]

1.  Background.  The defendant challenges the sufficiency of the evidence; therefore, we summarize the facts in the light most favorable to the Commonwealth, see Commonwealth v.

_____

[2] The defendant argues that the prosecutor made two improper remarks during closing argument that unduly prejudiced her and as a result warrant a new trial.  The defendant makes this claim only in regard to the manslaughter and reckless endangerment charge.  She contends that the prosecutor's statement that the crash would have been survivable if Dylan and Jayce were properly restrained was outside the evidence and was central to the question whether the defendant was reckless for not properly securing Dylan in a booster seat.  Because we conclude that there was insufficient evidence to support the manslaughter and reckless endangerment convictions, we need not address whether the defendant was prejudiced by the prosecutor's allegedly inappropriate comments.

To the extent that the defendant makes a due process challenge (and it is not clear that she does) that the prosecutor's other comments that appealed to juror sympathies warrant a new trial on the negligent homicide convictions, we disagree.  The prosecutor stated that first responders "did not need to see" what they saw when responding to the accident.  At the end of the prosecutor's closing argument, the judge specifically identified the statement and forcefully instructed the jury to disregard it.  The instruction adequately cured any potential prejudice regarding the negligent homicide convictions.  See Commonwealth v. Taylor, 455 Mass. 372, 385 (2009).

Latimore, 378 Mass. 671, 676-677 (1979), reserving pertinent facts for the discussion of the arguments. On the morning of June 20, 2014, Nicole Riel, mother of Dylan and Jayce, met the defendant in a parking lot to leave her children with the defendant.[3] Riel had to work, so the defendant planned to take the children to Dylan's baseball practice later that afternoon, and Riel planned to meet them there when she got out of work. The defendant had two children of her own -- a four year old son and a two year old daughter. The defendant's children's safety seats were installed in her vehicle, a four-door sedan, but her children were not with her when she picked up Dylan and Jayce. Riel secured Dylan, the four year old, into a booster seat and placed Jayce, the sixteen month old, in a front-facing safety seat in the defendant's vehicle.[4]

The defendant drove the children to her home, where she lived with her parents, so that they could play. Meanwhile, the defendant and her parents decided to leave for vacation with Dylan that day. The defendant had planned to take her two children and Dylan to meet her parents at their destination the

---

[3] The defendant often babysat her nephews while their mother was at work. Dylan was the son of the defendant's brother. Although not biologically related, the Hardy family also were close with Jayce, Dylan's half-brother.

[4] Riel had secured Jayce in a front-facing safety seat in her own vehicle from the time he was approximately one year old.

following day, but decided to leave that day instead, as Dylan's baseball practice was canceled.

After her plans changed, the defendant decided to drive to Riel's house to return Jayce to his mother and pick up an overnight bag for Dylan to take on vacation. As the defendant placed her two nephews and her son in her vehicle, her father observed that there were only two safety seats in her vehicle's back seat. He took a booster seat out of his wife's vehicle and placed it against the rear driver's side door of the defendant's vehicle. The defendant picked up the booster seat, opened her vehicle's rear door, looked into the back seat, closed the door, and placed the booster seat in the trunk of her vehicle.

When the defendant left, her son was in the rear driver's side of the vehicle in his booster seat, Jayce was in the front-facing safety seat behind the front passenger's seat with the straps set at an improper height, and Dylan was buckled into the rear middle seat with a shoulder and lap belt but no booster seat. The defendant's son was about one month older than Dylan, but Dylan was larger -- he was forty-four inches tall and weighed fifty-four pounds.[5]

---

[5] According to G. L. c. 90, § 7AA, Dylan was required to be secured in a booster seat. General Laws c. 90, § 7AA, states: "A passenger in a motor vehicle on any way who is under the age of [eight] shall be fastened and secured by a child passenger restraint, unless such passenger measures more than [fifty-seven] inches in height. The child passenger restraint shall be

At around 4:30 P.M., the defendant was driving approximately the speed limit, fifty-five miles per hour, on a four-lane highway in Brimfield.  This stretch of the highway was relatively flat; had four lanes, two eastbound and two westbound; and was divided in the middle by a double yellow line.  A dump truck with an attached trailer was stopped in the left-hand eastbound lane ahead, as the driver waited to make a left turn into a parking lot.  The truck was stopped for approximately thirty seconds to one minute, while the driver waited for westbound traffic to clear in order to make the turn.  The truck's trailer attachment's turn signal was on.  The defendant's vehicle approached the truck from behind without slowing down, then quickly swerved into the right eastbound lane and struck the guardrail on the right side of the road.  It crossed both eastbound lanes in front of the truck and then crossed the double yellow line into oncoming westbound traffic.  The defendant's vehicle struck the back of a sport utility vehicle in the left westbound lane before hitting a sedan traveling in the right westbound lane head-on.  The two vehicles were traveling between fifty and fifty-nine miles per hour at the time of impact.  Two State police accident reconstruction experts testified that the defendant did not apply her brakes at

---

properly fastened and secured according to the manufacturer's instructions."

any time leading up to the collision.  Dylan and Jayce did not survive the crash.[6,7]

At trial, the Commonwealth's medical examiner determined the cause of death was the same for each child -- blunt force trauma of the head and neck with atlanto-occipital disarticulation.  This type of injury occurs when "the head and the body are not in synchronization," such as when the body is restrained or stationary and the head continues to move forward at a high speed causing it to become unattached from the spine internally.  The medical examiner was not an expert in child safety seats and could not say whether Jayce would have survived if his seat had been rear-facing or whether Dylan would have survived if he had been in a booster seat.

One of the accident reconstruction experts testified that all three child safety seats were capable of being properly installed in the back seat.  According to State law and manufacturer recommendations, based on their ages and weights, Dylan should have been in a booster seat and Jayce, although in

---

[6] The defendant and her son suffered severe injuries.  The defendant was unresponsive when first responders arrived and was transported to a level one trauma center via helicopter.  Her son suffered a head injury and severe skeletal damage to his torso.

[7] The driver of the sedan that was hit and her seventeen month old daughter, who was secured in a front-facing safety seat in the rear of the vehicle, were severely injured but survived.

a proper safety seat, should have been rear-facing.  The accident reconstruction expert testified to the safety benefits of a booster seat and how it can position a child so that the seat belt aligns with the strong points of the body.  If properly used, a booster seat allows the body to "slow down and ride down . . . collision forces and make [a crash] survivable."  In addition, the expert testified that weather, solar glare, and mechanical defects were not factors in this collision.  In the expert's opinion, a "normal person" in the defendant's position would have been able to avoid the collision by perceiving the trailer ahead of her, and the crash was the result of the defendant's inattentiveness to the road in front of her.

2.  Sufficiency of the evidence.  The defendant moved for required findings of not guilty on all counts at the close of the Commonwealth's case and again at the close of all evidence. The motion was allowed as to one count of reckless endangerment of a child, as to the defendant's son, at the close of the Commonwealth's evidence, but the motions were otherwise denied. On appeal, the defendant contends that the judge erred when he denied the motions and ruled, both during trial and again after the jury's verdicts, that securing Dylan with a regular seat belt, but not placing him in a booster seat, was a legally sufficient basis to convict her of manslaughter and reckless endangerment of a child.  The Commonwealth contends that the

defendant's conduct created a substantial risk of bodily injury sufficient to satisfy the elements of recklessness for both involuntary manslaughter and reckless endangerment of a child.

The elements of the crime of manslaughter are derived from the common law. Commonwealth v. Carter, 481 Mass. 352, 364 (2019). In Carter, we reiterated the long-standing definition of manslaughter as "an unlawful homicide, unintentionally caused . . . by an act which constitutes such a disregard of probable harmful consequences to another as to constitute wanton or reckless conduct" (citation omitted). Id. Wanton or reckless conduct "involves a high degree of likelihood that substantial harm will result to another," and depends on whether the defendant realized the risk of harm or if a reasonable person, who knew what the defendant knew, would have realized such risk. Commonwealth v. Earle, 458 Mass. 341, 347 & n.9 (2010), quoting Commonwealth v. Welansky, 316 Mass. 383, 399 (1944).

As a general rule, the requirement of "wanton or reckless conduct" may be satisfied by either the commission of an intentional act or an intentional omission where there is a duty to act. Commonwealth v. Pugh, 462 Mass. 482, 497 (2012). "To constitute wanton or reckless conduct, as distinguished from mere negligence, grave danger to others must have been apparent, and the defendant must have chosen to run the risk rather than alter [her] conduct so as to avoid the act or omission which

caused the harm." Welansky, 316 Mass. at 398. See Commonwealth v. Dragotta, 476 Mass. 680, 686 (2017), quoting Commonwealth v. Levesque, 436 Mass. 443, 452 (2002). Although our cases state frequently that "[t]he essence of wanton or reckless conduct is intentional conduct," see Commonwealth v. Catalina, 407 Mass. 779, 789 (1990), quoting Welansky, supra at 399, wanton or reckless conduct does not require that the actor intended the specific result of her conduct, but only that he or she intended to do the wanton or reckless act. Commonwealth v. Life Care Ctrs. of Am., Inc., 456 Mass. 826, 832 (2010).

Reckless endangerment of a child, on the other hand, is a crime created by the Legislature. See G. L. c. 265, § 13L (§ 13L). To prove reckless endangerment of a child, the Commonwealth must prove "(1) a child under age eighteen, (2) a substantial risk of serious bodily injury or sexual abuse, and (3) the defendant wantonly or recklessly (i) engaged in conduct that created the substantial risk, or (ii) failed to take reasonable steps to alleviate that risk where a duty to act exists." Commonwealth v. Coggeshall, 473 Mass. 665, 667-668 (2016). The definition of "wanton or reckless" under § 13L is drawn from the common-law definition of wanton or reckless, barring one distinction. See id. at 670. Unlike the common-law meaning of wanton or reckless, under § 13L the Commonwealth does not have the option of proving a defendant's objective or

subjective state of mind -- the defendant actually must be aware of the risk.  Id. (in this regard § 13L evinces "a clearly expressed legislative intent to depart from the common-law meaning of the words 'wanton or reckless'").  Therefore, to uphold the defendant's manslaughter conviction we must conclude that the defendant or a reasonable person in the same circumstances would have realized the gravity of the danger.  Id. at 669-670.  To uphold her § 13L conviction, we must conclude that the defendant was actually aware of the risk.  Id. at 670.  Nonetheless, even though the awareness element is different, the conduct that defines "wanton or recklessness" is the same under both manslaughter and § 13L.  See id. at 669-670.  That is, if the conduct is wanton or reckless under § 13L, then it is wanton or reckless under the involuntary manslaughter standard.  However, because involuntary manslaughter can be measured by the reasonable person standard, conduct that is wanton or reckless under the involuntary manslaughter standard will not always be wanton or reckless conduct under § 13L.

This court, as well as the Appeals Court, has had many occasions to define what type of conduct is "wanton or reckless" concerning the care of children.  See Commonwealth v. Hendricks, 452 Mass. 97, 104-106 (2008) (wanton or reckless conduct under § 13L where defendant [1] went on high-speed nighttime chase with police while his three year old child was in vehicle, and

[2] fled on foot with child with police in pursuit because defendant knew such pursuit would place child at substantial risk of harm); Commonwealth v. Twitchell, 416 Mass. 114, 118 (1993) (failure to provide medical care to young child in distress is reckless conduct in support of involuntary manslaughter conviction); Commonwealth v. Leonard, 90 Mass. App. Ct. 187, 194 (2016) (wanton or reckless conduct under § 13L where defendants were consuming alcohol along with teenagers in defendants' home, were aware that minor victim was vomiting after consuming large volume of alcohol, and did not heed victim's requests to be taken to hospital); Commonwealth v. Figueroa, 83 Mass. App. Ct. 251, 259-261 (2013) (wanton or reckless conduct under § 13L where, after defendant's boyfriend dropped her infant grandson, defendant [1] refused plea of infant's mother to take infant to hospital, and [2] took mother's telephone to prevent her from calling 911); Commonwealth v. Power, 76 Mass. App. Ct. 398, 407 (2010) (violation of statutory and regulatory standards was wanton or reckless conduct in support of involuntary manslaughter conviction where toddler died in defendant's day care facility); Commonwealth v. Robinson, 74 Mass. App. Ct. 752, 758-759 (2009) (wanton or reckless conduct in support of conviction of assault and battery upon child where defendant failed to give child

timely medical attention even though there was high likelihood that child would suffer substantial bodily injury without it).

Likewise, we have considered the type of conduct that is "wanton or reckless" when operating a motor vehicle. See Hendricks, 452 Mass. at 104-106; Commonwealth v. DeSimone, 349 Mass. 770, 770-771 (1965) (defendant passing vehicle, weaving through traffic, following too closely, and again passing vehicle sufficient to constitute wanton or reckless conduct for manslaughter conviction); Commonwealth v. Moore, 92 Mass. App. Ct. 40, 45-46 (2017) (wanton or reckless operation of vehicle where defendant led police on high-speed chase through busy city streets at rush hour and made no effort to slow down or steer away from intersection before collision that struck victim); Commonwealth v. Guaman, 90 Mass. App. Ct. 36, 41 (2016) (wanton or reckless operation of motor vehicle supported manslaughter conviction where defendant chose to drive after being visibly drunk and continued to drive after striking victim, hearing victim scream, and hearing witnesses yelling at defendant to stop). In these cases, "a high degree of likelihood that substantial harm will result to another" flowed from the intentional conduct. Earle, 458 Mass. at 347, quoting Welansky, 316 Mass. at 399.

Perhaps it is a testament to prosecutorial discretion, trial judges properly dismissing cases based on insufficient

evidence, and juries conscientiously performing their function that we have had few occasions to review convictions on the basis that the evidence was insufficient to prove "wanton or reckless" conduct. See, e.g., Dragotta, 476 Mass. at 686-689 (not wanton or reckless conduct where defendant's infant suffered significant injuries from defendant's boyfriend because there was no evidence that defendant should have known boyfriend was so manifestly unfit to care for victim that grave danger existed when infant was left in boyfriend's care); Pugh, 462 Mass. at 484 (no wanton or reckless conduct where defendant in labor decided to give birth unassisted); Life Care Ctrs. of Am., Inc., 456 Mass. at 833-834 (insufficient evidence to support involuntary manslaughter conviction where nursing home resident died as result of negligence, but no individual behavior could be found to have been wanton or reckless); Commonwealth v. Santos, 94 Mass. App. Ct. 558, 561 (2018) (defendant's act of leaving child in front of television while defendant used bathroom was not reckless even though child previously had wandered from home). But see Santos, supra at 562 (searching for missing child for only ten minutes and not calling police was reckless conduct).

Moreover, in all cases, not just those in which there is a horrific tragedy as there is here, we must look at the conduct that caused the result to determine whether it was wanton or

reckless, not the resultant harm.  See, e.g., Commonwealth v.
Flynn, 420 Mass. 810, 815 (1995) (evidence was insufficient to
support guilty verdict because Commonwealth failed to prove that
defendant's conduct was cause of victim's death); Commonwealth
v. Michaud, 389 Mass. 491, 498-499 (1983) (where infant died of
starvation, total evidence, including physical appearance of
child at time of death and conjectural evidence that mother did
not appropriately feed child, was insufficient to establish
wanton or reckless culpability).

Here, viewing the evidence in the light most favorable to
the Commonwealth, no rational juror could find beyond a
reasonable doubt that the defendant's actions were wanton or
reckless.  The evidence showed that Dylan and Jayce died as a
result of the collision.  The jury were permitted to infer from
the evidence that the defendant's negligent driving contributed
to the collision.  Experts with the State police testified that
the defendant was driving approximately the speed limit, but did
not apply her brakes at any time leading up to collision.
Neither weather, solar glare, nor mechanical defects were
factors in the collision.  One of the experts concluded that a
"normal person" in the defendant's position would have been able
to avoid the collision by perceiving the trailer ahead of her
and that the crash was the result of the defendant's
inattentiveness to the road in front of her.  The defendant's

general inattentiveness alone, however, is insufficient to support a finding of recklessness.  Cf. Hendricks, 452 Mass. at 104-106; Moore, 92 Mass. App. Ct. at 45-46; Guaman, 90 Mass. App. Ct. at 41.

The evidence also showed that the defendant acknowledged the booster seat provided by her father, but that she placed it in the trunk of her vehicle rather than secure it in the backseat with the two safety seats already installed, even though three child safety seats were capable of being properly installed at the same time.  The Commonwealth relies on this evidence to support the inference that the defendant recognized, and thereafter disregarded, the risk of harm from securing Dylan without a booster seat.  Although this evidence suggests that the defendant appreciated the risk of not securing Dylan in a booster seat, it does not support an inference that grave danger from not securing Dylan in a booster seat was apparent.  Put differently, there was not sufficient evidence for the jury to find that the defendant was aware, or that a reasonable person would have been aware, that failing to secure Dylan in a booster seat created a high degree of likelihood that substantial harm would result.  See Dragotta, 476 Mass. at 686.  This was not a situation where the defendant's conduct had a likely consequence of substantial harm.  See Commonwealth v. Chapman, 433 Mass. 481, 488 (2001) (wanton or reckless conduct where defendant left

baby unattended for three minutes in water deep enough to drown, waited from three to five minutes once seeing baby had drowned before calling 911, and made no effort to revive baby using cardiopulmonary resuscitation). To reach that conclusion, we would have to conclude that operating a motor vehicle with an improperly restrained child is per se an inherently dangerous activity, even absent other factors that enhance its dangerousness. See, e.g., Hendricks, 452 Mass. at 104-106; Moore, 92 Mass. App. Ct. at 45-46.

In addition, the evidence showed that a child of Dylan's size legally was required to be secured in a booster seat. See G. L. c. 90, § 7AA. The defendant's failure to comply with the Massachusetts law that required a child of Dylan's size to be secured in a booster seat does not, by itself, amount to wanton or reckless conduct. Power, 76 Mass. App. Ct. at 407. Again, the jury could find that securing a four year old with only a seat belt was negligent, but recklessness is more than a mistake of judgment or even gross negligence; it is conduct that is "substantially more than negligence." See Hendricks, 452 Mass. at 103. See also Michaud, 389 Mass. at 499.

The Commonwealth argues that if the defendant's decision to improperly restrain the children in her vehicle or her "dangerous driving" -- including inattentiveness, an unsafe lane change, collision with the guardrail, and overcorrection into

oncoming traffic -- alone are not enough to satisfy the recklessness elements of both crimes, then, in the totality of the circumstances, her conduct was reckless.  The Commonwealth cites Hendricks, 452 Mass. at 104-105, as support for its position that dangerous driving combined with other evidence is sufficient to show recklessness.  The evidence here fell markedly short of the evidence that proved recklessness in Hendricks.  The "dangerous driving" in Hendricks consisted of a deliberate high-speed nighttime chase to evade and elude police. Id. at 103.  That defendant was traveling with his child in excess of twice the speed limit on unpaved, narrow roads containing sharp turns.  Id.  The defendant's general inattentiveness here is not the same intentional wanton or reckless conduct as that at issue in Hendricks.

3.  Conclusion.  Our cases demonstrate that something much greater than negligence is necessary to affirm convictions of involuntary manslaughter and reckless endangerment of a child. See Commonwealth v. Bouvier, 316 Mass. 489, 495 (1944).  Where negligence may result from "inadvertence, incompetence, unskillfulness, or failure to take [adequate] precautions," recklessness "requires a conscious choice of a course of action . . . with knowledge of the serious dangers to others involved" (citation omitted).  Boyd v. National R.R. Passenger Corp., 446 Mass. 540, 547 (2006).  Under that standard, there was not

legally sufficient evidence to show that the defendant's conduct was wanton or reckless.  Therefore, the judgments of conviction of manslaughter and reckless endangerment of a child are reversed, the verdicts are set aside, and the case is remanded to the Superior Court for the entry of required findings of not guilty.  The two convictions of negligent motor vehicle homicide are affirmed.

So ordered.