NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1158

COMMONWEALTH

vs.

MICHELINE SANON.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury-waived trial in the District Court, the defendant, Micheline Sanon, was found guilty on three counts of reckless endangerment of a child.[1]  G. L. c. 265, § 13L.  On appeal, Sanon challenges the sufficiency of the evidence supporting these convictions.  Because we agree that the evidence presented by the Commonwealth at trial was insufficient to prove that Sanon's conduct put her children at risk of "serious bodily harm" as defined in G. L. c. 265, we reverse the convictions.

---

[1] Sanon was also charged with one count of assault and battery, G. L. c. 265, § 13A (a), and one count assault and battery with a dangerous weapon, G. L. c. 265, § 15A (b).  These charges were dismissed on the trial date at the request of the Commonwealth, however, and they are not at issue in this appeal.

Facts.  We recite the relevant facts in the light most favorable to the Commonwealth.  See Commonwealth v. Davis, 487 Mass. 448, 450 (2021).  In 2021, Sanon lived with her mother, her partner, her adult son, and her three minor children (ages ten, nine, and seven) in a home in East Bridgewater.  Sanon's mother, who spoke French, but not English, supervised the minor children when Sanon was not home.  The oldest of Sanon's minor children had a cell phone and previously told Sanon's neighbor that "she was in charge all the time" because her grandmother did not speak English.  The neighbor testified, however, that he had never known Sanon's mother to be absent while Sanon was not home.

On May 15, 2021, East Bridgewater police officers responded to Sanon's home after the neighbor reported hearing Sanon's children screaming, both inside and outside the home.  At trial, the Commonwealth presented evidence to show that Sanon's home was unhygienic, and that certain conditions in the home and backyard were unsafe.[2]  For example, the living room floor was sticky and there were bags of clothing and trash, flies, and a strong odor in the room.  In the kitchen, the officers noted maggots and more flies; a sink overflowing with dirty dishes; and moldy, inedible food.  In both a front room and a child's

_____

[2] At trial, the Commonwealth introduced photographs of some of the conditions inside the home.

2

bedroom, the police also saw food on the ceilings and floor and bare mattresses on the floor. To move between these rooms, the officers used a hallway that contained trash and dirty clothes, and that was dark due to inoperable lighting fixtures. Additionally, chickens and roosters were roaming the home's guano-covered basement floor and the backyard contained garbage, ten to fifteen mattresses, tires, bags of clothing, and several appliances with doors on them.

After officers spoke with the child whom Sanon's neighbor heard screaming inside the home, Sanon was placed under arrest. Prior to leaving the home, however, Sanon was permitted to move several bags of fresh groceries from inside the home into her car. She then locked the car and had the officers take her keys. There was also another car in the driveway that was locked and filled with bags of food, and one of Sanon's children told the officers that the food in the cars was the only food available to them at home.

Discussion. In analyzing whether there is sufficient evidence to support a conviction, the "question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979). We review this

3

question de novo.  See Commonwealth v. Hamilton, 83 Mass. App. Ct. 406, 410 (2013).

Under G. L. c. 265, § 13L, "[w]hoever wantonly or recklessly engages in conduct that creates a substantial risk of serious bodily injury . . . to a child or wantonly or recklessly fails to take reasonable steps to alleviate such risk where there is a duty to act shall be punished."  This statutory standard is exacting.  For the purposes of the statute, the Legislature has defined "serious bodily injury" as "bodily injury which results in a permanent disfigurement, protracted loss or impairment of a bodily function, limb or organ, or substantial risk of death."  Id.  Furthermore, our case law is explicit that, to establish a "substantial risk" of such an injury, the Commonwealth must demonstrate "a good deal more than a possibility" of that injury.  Commonwealth v. Coggeshall, 473 Mass. 665, 668 (2016), quoting Commonwealth v. Hendricks, 452 Mass. 97, 103 (2008).  Based on these standards, the Commonwealth's evidence in the present case supported the investigating officers' concern for Sanon's children, but was not sufficient to prove that Sanon's conduct put those children at a substantial risk of serious bodily injury.  G. L. c. 265, § 13L.

Even in the light most favorable to the prosecution, the evidence did not support the Commonwealth's contention that

4

Sanon endangered her children by leaving them unsupervised. The evidence at trial was that Sanon's mother was at home with the children when Sanon was not there. Neither the ten year old child's claim that she was "in charge" when Sanon was absent, nor Sanon's mother's lack of English proficiency, demonstrated that Sanon's mother could not or did not provide adequate supervision of the minor children. The children were thus not at risk of serious bodily injury on this ground.[3] See Commonwealth v. Santos, 94 Mass. App. Ct. 558, 561-562 (2018) (parent leaving three year old child alone in one room of home while in another room of same home did not provide probable cause for charge of reckless endangerment of child).

The Commonwealth likewise failed to prove that Sanon's children were at serious risk of bodily injury due to a lack of edible food or accessible water in the home. Although Sanon removed fresh food from the home before leaving under arrest, there is no evidence that she otherwise deprived her children of food. To the contrary, an officer testified at trial that Sanon's children did not appear to be malnourished. Likewise,

---

[3] The facts of Commonwealth v. Nababi, 99 Mass. App. Ct. 1120 (2021), the unpublished decision on which the Commonwealth relies when making this argument, are readily distinguishable from the present case. See id. (child recklessly endangered when left unsupervised in crib for several hours, and at other times supervised by two children age eleven or younger with no adults present).

the evidence that an accumulation of dirty dishes in the kitchen sink gave officers the impression that the faucet was inaccessible was not sufficient to establish that Sanon failed to provide her children with access to drinking water in the home. Absent a showing that Sanon's children were being denied food or water on a more "protracted" basis, the Commonwealth thus did not prove the existence of a substantial risk of serious bodily injury on this basis. Commonwealth v. Leonard, 90 Mass. App. Ct. 187, 195 n.8 (2016) (listing malnutrition and dehydration as "[e]xamples of conditions that, when protracted, can constitute substantial bodily injury" under G. L. c. 265, § 13L).

When considering the Commonwealth's evidence of the cluttered and unsanitary conditions in Sanon's home and backyard, and conditions that could potentially be hazardous for children,[4] we reach a similar conclusion. In doing so, we do not blind ourselves to the commonsense proposition that proper hygiene, sanitation, and safety are conducive to good health. That, however, is not our standard. To the extent that the Commonwealth presented evidence that the conditions in Sanon's home presented a risk of harm to her children, it either failed to show that the risk was more than speculative, or failed to

---

[4] Namely, the poor lighting in the hallway of the home, and the appliances in the backyard.

show that the potential harm reached the level of "serious bodily injury." G. L. c. 265, § 13L. See Coggeshall, 473 Mass. at 668, quoting Hendricks, 452 Mass. at 103 ("in the context of [G. L. c. 265,] § 13L a 'substantial risk' means 'a good deal more than a possibility'"); Commonwealth v. Costa, 97 Mass. App. Ct. 447, 451-452 (2020) (evidence that parent left child in car demonstrated "negligence at the most," because Commonwealth's contention that child "could have injured herself in any number of ways" amounted to "nothing more than speculation"). Accordingly, the convictions for reckless endangerment of a child under G. L. c. 265, § 13L, must be reversed.[5]

Conclusion. For the reasons set forth above, the judgments are reversed and the findings are set aside. Judgments shall enter for the defendant.

So ordered.

By the Court (Henry, Hand & Brennan, JJ.[6]),

Clerk

Entered: January 9, 2025.

---

[5] Given our conclusion, we need not and do not reach the question whether Sanon acted wantonly or recklessly. See G. L. c. 265, § 13L.

[6] The panelists are listed in order of seniority.

7