NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1128
23-P-1129

COMMONWEALTH

vs.

TARRAY GIBBS
(and a companion case[1]).

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a jury trial in the District Court, the defendants, Tarray Gibbs and Noelle Mayes, were found guilty of multiple counts of reckless endangerment of a child in violation of G. L. c. 265, § 13L.  Mayes was also convicted of intimidating a witness in violation of G. L. c. 268, § 13B.  On appeal, the defendants argue that their motions to dismiss for lack of probable cause and their motions for required findings of not guilty were improperly denied, that video surveillance evidence was erroneously admitted, and that the prosecutor made improper statements in closing argument.  Mayes also argues that her

_____

[1] Commonwealth vs. Noelle Mayes.

motion to suppress evidence should have been allowed.  We affirm.

Discussion.  1.  Motion to suppress.  Defendant Mayes challenges the denial of her motion to suppress evidence of her identity.  She argues that State Police Trooper Matthew Stone's reaching into the car to retrieve her driver's license from the dashboard was a warrantless search performed in violation of the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights.  Mayes argues that Stone "had no probable cause [to believe] that a crime was being committed [in the car] nor was there any weapons or contraband in [sight]."  In denying her motion, the motion judge determined that Stone's repeated requests for Mayes's license "were within the scope of the community caretaking function, and when she failed to produce it, [his] briefly reaching into the car and retrieving the driver's license from the dashboard was minimally intrusive and did not result in an unlawful seizure."  We agree.

The Fourth Amendment and art. 14 "protect individuals from unreasonable, governmental searches and seizures."  Commonwealth v. Delgado-Rivera, 487 Mass. 551, 554 (2021).  A warrantless search is per se unreasonable unless it "falls within a narrow class of permissible exceptions to the warrant requirement" (quotations and citation omitted).  Commonwealth v. Perkins, 465 Mass. 600, 603 (2013).  The community caretaking doctrine

2

provides one such exception when a "circumstance exists apart from the investigation of criminal activity that supports police intervention to protect an individual or the public." Commonwealth v. Fisher, 86 Mass. App. Ct. 48, 51 (2014). Stone's actions fell squarely within this exception.

Stone arrived on scene to find four unattended children sitting inside an automobile, parked in a high crime area, in approximately ninety-degree weather. Coupled with the fact that two of children were seated in the driver's seat and the engine was running, the circumstances called for police intervention to protect the children. See Commonwealth v. Sargsyan, 99 Mass. App. Ct. 114, 116 (2021). For the same reason, when the defendants arrived, Stone was justified in asking Mayes for her driver's license to confirm her identity and ensure the children were safely released into their parents' custody.[2] "Such a request is a minimal intrusion on the defendant's rights and does not involve an improper seizure." Commonwealth v. Mateo-German, 453 Mass. 838, 843 (2009).

Upon Mayes's repeated refusal to provide identification, Stone's decision to reach into the vehicle and retrieve her driver's license from the dashboard was permissible. In carrying out community caretaking functions, "officer[s] may

_____

[2] Gibbs complied with Stone's request for identification, but he was not licensed to operate a motor vehicle.

take steps that are reasonable and consistent with the purpose of [their] inquiry, even if those steps include actions that might otherwise be constitutionally intrusive" (citation omitted).  Commonwealth v. Knowles, 451 Mass. 91, 95 (2008).  As Mayes states in her brief, Stone did not search "in compartments, the trunk, coolers, or under the seat."  Thus, Stone's actions never ventured beyond the limitations imposed by the community caretaking doctrine.  See New York v. Class, 475 U.S. 106, 118 (1986) ("The search was focused in its objective and no more intrusive than necessary to fulfill that objective").  Mayes's motion to suppress was properly denied.

2.  Sufficiency of the evidence.  Both defendants claim that the evidence was insufficient to sustain their convictions, and that their required motions for not guilty should have been allowed.  When considering a motion for a required finding of not guilty, a judge must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979).  "Proof of the essential elements of the crime may be based on reasonable inferences drawn from the evidence . . . , and the inferences a jury may draw 'need only be reasonable and possible and need not be

4

necessary or inescapable.'" Commonwealth v. West, 487 Mass. 794, 800 (2021), quoting Commonwealth v. Casale, 381 Mass. 167, 173 (1980).

"To prove reckless endangerment of a child, the Commonwealth must demonstrate that the defendant wantonly or recklessly engaged in conduct that created a substantial risk of serious bodily injury or sexual abuse to a child under age eighteen,"[3] or that the defendant "failed to take reasonable steps to alleviate that risk where a duty to act existed." Commonwealth v. Rezac, 494 Mass. 368, 376 (2024). The evidence must show that the defendant was aware of, and consciously disregarded, a substantial and unjustifiable risk. See Commonwealth v. Hendricks, 452 Mass. 97, 103-104 (2008); Commonwealth v. Costa, 97 Mass. App. Ct. 447, 449-450 (2020). In cases involving inadequate supervision of a child, "the inquiry is necessarily fact-specific, requiring consideration of the totality of the circumstances." Commonwealth v. Santos, 94 Mass. App. Ct. 558, 561 (2018). Relevant circumstances include the following:

> "the gravity and character of the possible risks of harm; the degree of accessibility of the [defendant]; the length of time of the abandonment; the age and maturity of the children; the protective measures, if any, taken by the [defendant]; and any other circumstance that would inform

---

[3] The four children were thirteen years old, six years old, two years old, and eight months old at the time of the incident.

5

>     the factfinder on the question whether the defendant's
>     conduct was [wanton or reckless]."

Id., quoting Barnes v. Commonwealth, 47 Va. App. 105, 113 (2005).

The defendants left the children unsupervised in a car in a casino parking garage -- with a thirteen year old child in the driver's seat and the engine running. The parking garage was well known by law enforcement for incidents of disorderly conduct, narcotics sales, assault, prostitution, possession of firearms, and shootings. When Stone, the first responding officer, arrived, the temperature in the garage was at least ninety degrees. A half-empty water bottle was the children's only apparent source of hydration, the eight month old infant appeared sweaty, and necessary items for the care of an infant were absent. The children were left unattended in this environment on three separate occasions over the span of almost five hours, twice for more than one hour. Under the totality of the circumstances, a rational jury could conclude, beyond a reasonable doubt, that the defendants intentionally left the children alone in circumstances creating a substantial and unjustifiable risk to the children's safety. See Santos, 94 Mass. App. Ct. at 561. Contrast Costa, 97 Mass. App. Ct. at 451 (no probable cause for reckless endangerment where defendant was in close proximity to car and there was no evidence that motor

6

was running); Hannon v. Commonwealth, 68 Va. App. 87, 95 (2017) (no reckless endangerment where children were left unattended in parking lot with no evidence of "dangerous" temperature or "that the parking lot was in a high crime area").

In addition, the jury could infer the defendants' consciousness of guilt from the fact that they lied to police about how long the children were left unattended.  See Commonwealth v. Cassidy, 470 Mass. 201, 217 (2014) ("Evidence of . . . false statements to police . . . generally is admissible as some evidence of consciousness of guilt").  The jury could likewise infer consciousness of guilt from Mayes's threat to accuse Stone of touching her son's genitalia if charges were brought.  See Commonwealth v. Miles, 420 Mass. 67, 75 (1995) ("Evidence regarding threats of intimidation of key witnesses for the prosecution is admissible to demonstrate consciousness of guilt").

The defendants' principal argument regarding the sufficiency of the evidence is that the jury mistakenly credited inconsistent and contradictory testimony of the police officers who were involved with the case.  Assuming for the sake of argument that the testimony was inconsistent and contradictory, the defendants' claims are unavailing because it is the province of a jury to "believe all, some, or none of the testimony of a witness."  Commonwealth v. Gonzalez, 67 Mass. App. Ct. 877, 877

7

(2006).  In assessing the sufficiency of the evidence, we consider what the jurors could rationally believe, taking the evidence in the light most favorable to the Commonwealth.  See Latimore, 378 Mass. at 677.  "To hold otherwise would allow a trial judge to invade the province of the jury as the sole finder of fact."  Commonwealth v. Walker, 68 Mass. App. Ct. 194, 198 (2007).

3.  Motions to dismiss.  The applications for criminal complaints included essentially the same facts that were presented at trial, which were sufficient to prove the defendants' guilt beyond a reasonable doubt.  Because probable cause requires "more than mere suspicion," but considerably less than proof beyond a reasonable doubt, Commonwealth v. Cartright, 478 Mass. 273, 283 (2017), quoting Commonwealth v. Jewett, 471 Mass. 624, 629 (2015), we also reject the defendants' claim that their motions to dismiss the complaint should have been allowed.

4.  Surveillance footage.  The defendants challenge the admission in evidence of the casino parking lot surveillance video footage.  They claim the video recording contained only footage favorable to the Commonwealth and therefore violated the doctrine of completeness.  Because the defendants did not raise this objection at trial, our review is limited to whether there was error creating a substantial risk of a miscarriage of justice.  See Commonwealth v. Rivera, 425 Mass. 633, 636-637

8

(1997); Commonwealth v. Cintron, 103 Mass. App. Ct. 799, 804 (2024).[4]

"When a party introduces a portion of a statement or writing in evidence the doctrine of verbal completeness allows admission of other relevant portions of the same statement or writing which serve to clarify the context of the admitted portion" (quotation and citation omitted). Commonwealth v. Carmona, 428 Mass. 268, 272 (1998). "The rule prevents a party from presenting a fragmented and misleading version of events to the finder of fact." Id. Assuming without deciding that the doctrine of completeness applies in these circumstances, the defendants would have been permitted to introduce footage that the Commonwealth had not introduced.[5] However, nothing in the record suggests that the defendants were prevented from introducing other parts of the surveillance footage to clarify what they considered to be misleading. Their briefs do not

---

[4] Because the defendants' motion in limine to exclude the surveillance video footage was based on relevance and the alleged withholding of exculpatory evidence, it did not preserve the claim pressed on appeal. See Commonwealth v. Belnavis, 104 Mass. App. Ct. 798, 801 (2024).

[5] The doctrine of completeness would allow the defendants to offer "otherwise inadmissible hearsay" to prevent the Commonwealth from presenting a misleading, fragmentary presentation of a conversation or document. Commonwealth v. Steeves, 490 Mass. 270, 282 (2022). It does not appear that any footage the defendants wished to offer would have been inadmissible hearsay.

explain which segments of the footage were omitted or how the omitted segments would have been exculpatory. We discern no error or risk of a miscarriage of justice.[6]

5. Closing argument. Finally, both defendants argue that the prosecutor impermissibly stated her opinion on the credibility of their son's testimony. A prosecutor may comment on "a witness's demeanor, motive for testifying, and believability, provided that such remarks are based on the evidence, or fair inferences drawn from it, and are not based on the prosecutor's personal beliefs." Commonwealth v. Freeman, 430 Mass. 111, 118-119 (1999). Improper vouching occurs when "an attorney expresses a personal belief in the credibility of a witness, or indicates that he or she has knowledge independent of the evidence before the jury." Commonwealth v. Wilson, 427 Mass. 336, 352 (1998).

The prosecutor's statements regarding the son's credibility were within the proper bounds of argument. In her closing, she

---

[6] The defendants' briefs claim in passing, unsupported by any evidence or record citation, that they "did not have access to the video in its entirety which would have exonerated them." The record before us does not support the defendants' apparent claim that the prosecution withheld exculpatory portions of the surveillance video footage. Rather, it appears from the trial transcript that the four hours of casino surveillance footage was admitted in its entirety, even though the Commonwealth played only excerpts for the jury at trial. If the defendants contend that the Commonwealth withheld footage that was material and exculpatory, they may attempt to offer proof of this claim in a motion for a new trial.

told the jury that the defendants had "brought their son . . . to lie to you."  In support of this statement, she highlighted the video surveillance evidence that contradicted the son's testimony and his demeanor at trial when asked if he knew that his interaction with Stone had been videorecorded.  She did not express her personal beliefs about the son's credibility or indicate that she had knowledge outside of the evidence at trial that would call his credibility into question.

Judgments affirmed.

By the Court (Massing, Henry & Grant, JJ.[7]),

Clerk

Entered:  January 21, 2025.

---

[7] The panelists are listed in order of seniority.